Charles Sacks and L. A. Cazanov, copartners, Appellants, v. Howard J. Legg, Mayor of City of Pontiac, Appellee.

## Gen. No. 6,840.

1.  WORDS AND PHRASES—*what is a "building."* A building is a fabric or edifice, such as a house, church, or the like, and designed for the habitation of men or animals, or for the shelter of property. In its broadest sense it can mean only an erection intended for use and occupation as a habitation or for some purpose of trade, manufacture, ornament or use, constituting a fabric or edifice, such as a house, a store, a church, a shed; it is a fabric or edifice constructed for use or convenience, and it must be permanent and designed for the habitation of men or animals, or the shelter of property.

2.  MUNICIPAL CORPORATIONS, § 83*—*how ordinances are construed.* In construing a municipal ordinance, words must be given their usual and popular meaning, when the sense will bear it.

3.  MUNICIPAL CORPORATIONS, § 83*—*how particular words in ordinances are construed.* The same words occurring in different parts of a municipal ordinance must be given the same meaning, unless the context requires different meanings.

4.  MUNICIPAL CORPORATIONS, § 847*—*what is a "radius"* A radius

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Sacks et al. v. Legg, 219 Ill. App. 144.

is a straight line from the center of a circle or sphere to its periphery or surface, and the periphery is the circumference of a circle.

5. WORDS AND PHRASES—*how particular ordinance is construed.* In an ordinance prohibiting the maintenance of junk yards, where two-thirds of the buildings "within a radius" of 300 feet are used exclusively for certain purposes, the word "within" is used as a preposition and means "inside the limits of."

6. MUNICIPAL CORPORATIONS, § 847*—*how ordinance prohibiting junk yards is construed.* In an ordinance prohibiting the maintenance of any junk yard where two-thirds of the buildings "within a radius of 300 feet" of the proposed site are used exclusively for certain purposes, the quoted phrase is to be read as including all buildings located at all points inside of the limits of 300 feet of the proposed site.

7. MUNICIPAL CORPORATIONS, § 847*—*what structures are "buildings."* Certain enumerated structures considered and *held* "buildings" and to be counted as such in passing upon an application for a license to maintain a junk yard under an ordinance prohibiting such maintenance, where two-thirds of the buildings within a specified radius of the proposed site are used exclusively for certain purposes.

8. APPEAL AND ERROR, § 1802*—*when remand for writ of mandamus not refused because matter moot.* Where an ordinance regulating the licensing of junk dealers merely provides that a license may be issued for one year, without making reference to the city's fiscal year, the fact that the fiscal year during which the application for a license was made has expired will not prevent the Appellate Court from ordering the lower court to issue a writ of mandamus to compel the issuance of the license, especially where the year for which the license would have run, if issued as requested, has not expired.

Appeal from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding. Heard in this court at the April term, 1920. Reversed and remanded with directions. Opinion filed October 12, 1920.

E. A. SIMMONS and NEIL KERR, for appellants.

ROBERT M. NIVEN, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Vol. CCXIX 10

MR. JUSTICE NIEHAUS delivered the opinion of the court.

Appellants having purchased Lots 1 to 8 in Block 8, of Fell's Addition to Pontiac, petitioned the City of Pontiac for a license to conduct a junk yard on the site, and presented to the City Council their bond in the penal sum of $500, which was approved and accepted by the City Council; and thereupon tendered the sum of $25 to the city clerk of Pontiac, this being the required license fee, which was accepted. The Mayor refused, however, to issue the license on the ground that said site did not comply with the ordinance of the city in reference to junk yards. Appellants then filed a petition in the circuit court of Livingston county for a writ of mandamus to compel appellee to issue a license to appellants to conduct a junk yard on their premises. Issue was joined upon the petition, a jury waived and the case heard by the court, who denied the prayer of the petition, and appellants have appealed to this court.

Section 1 of the city ordinance of the City of Pontiac is as follows: "It shall be unlawful for any person, firm or corporation to locate, establish, conduct or maintain any junk shop or junk yard in the City of Pontiac, either at wholesale or retail, within three hundred (300) feet of any church, hospital, public or parochial school, or the grounds thereof. Nor shall any junk shop or junk yard be located, established, conducted or maintained on any site where two-thirds of the buildings within a radius of three hundred (300) feet of the proposed site are used exclusively for residence and retail store purposes, or used exclusively for residence purposes, without the written consent of a majority of the property owners, according to the frontage, within a radius of three hundred (300) feet of the proposed site of said building or yard."

It was stipulated by the parties previous to the trial that buildings on the plat, which were marked by

numerals from 1 to 25 inclusive, were either residences or retail stores, concerning which there is no contest, and should be counted for appellee; and that the buildings indicated on the same plat, lettered A, B, C, D, E and I, were neither residences nor retail stores, and should be counted for appellants, making 25 buildings which it is conceded should be counted for appellee and 6 for appellants.

On the trial the court found that the buildings marked M and S, being two barns, should be counted for appellants; that F1, F2, F3, F4 and F5, being the Kipp lumber yard and buildings, should be counted as one building for appellants; that U, V, and W, being the Sacks' storehouse and barns, should be counted as one building for appellants; that G1 and G2, being the Kipp cement and coal sheds, should be counted as one building for appellants, and held that none of the other places designated on the plat by letters and circles were buildings, and should not be counted for the appellants; and also finding that there were 25 residences and retail stores which should be counted against appellants and 11 buildings, which were neither residences nor retail stores, which should be counted for appellants.

Appellants have assigned error, on the refusal of the trial court to count certain places designated on the plat by letters and circles as buildings. This brings us to consider what is a building. A building is defined in Corpus Juris to be ''a fabric or edifice, such as a house, church, or the like, and designed for the habitation of men or animals, or for the shelter of property.'' Taken in its broadest sense, it can mean only an erection intended for use and occupation as a habitation, or for some purpose of trade, manufacture, ornament or use, constituting a fabric or edifice, such as a house, a store, a church, a shed. 9 Corpus Juris 685. Our Supreme Court has defined a building to be ''a fabric or edifice constructed for use

or convenience; as a house, a church, a shop. It must be permanent and designed for the habitation of men or animals, or the shelter of property." *Bruen v. People,* 206 Ill. 423; 2 Am. & Eng. Encyc. of Law (1st Ed.) p. 601; *Woodburn v. Russell,* 213 Ill. App. 553.

The court refused to count the building lettered O for the reason that it was a building on the proposed site. The building lettered O is located on the extreme south side of the proposed site, and at the time of the application for a license was used as a flour warehouse and since has been converted into a repair shop. In the construction of an ordinance of a municipal corporation, when the sense will bear it, the usual and popular meaning must be given to the words, and the same words occurring in different parts of the ordinance are to be given the same meaning unless the context requires different meanings. *J. Burton Co. v. City of Chicago,* 236 Ill. 383; *Culver v. Waters,* 248 Ill. 163. The ordinance in question prescribes that no junk yard shall be maintained where two-thirds of the buildings within a radius of 300 feet are used exclusively for residence and retail store purposes, etc. A radius, as defined by Webster, is a straight line from the center of a circle or sphere to its periphery or surface, and a periphery is the circumference of a circle. The word "within," as here employed, is clearly used as a preposition, and in the sense that the whole territory embraced in the limits of such 300 feet should be included. The third definition given by Webster is "inside the limits of"; "not going outside of"; "not beyond or exceeding." *Cary-Lombard Lumber Co. v. Fullenwider,* 150 Ill. 634. And it seems too clear for argument that the phrase in the ordinance referred to is to be read as including all buildings located at all points inside of the limits of 300 feet of the proposed site; and it was therefore error not to count the building lettered O for appellants. The building lettered P, being the G. and A. signal tower,

and Q the section house, are both structures that come within the definition given and are within the required radius, and should therefore be counted for appellants as two buildings. The building lettered M is a brick structure of considerable size and is used for a different purpose, than the elevator building itself, and is constructed of different material. It should have been counted for appellants. The structure lettered X, being the Snell junk house, is a building which at one time had been used as a residence, but laterally used for storing junk, and at the time of the application for the license was not used as a residence. It should also have been counted for appellants. The structure lettered H1, being the Buell coal office, meets all the requirements of a building, and should have been counted for appellants. The structures lettered H2, H3 and H4, being the Buell coal sheds, are separate and distinct from the building H1 and should have been counted as at least one building for appellants. The structure lettered T, being known as the Sacks' garage, is used for a storage of automobiles and should have been counted for appellants. The structures lettered J1 and J2, being Lobb's office and coal shed, respectively, are buildings within the meaning of that term, and should have been counted at least as one building for appellants. Counting the structures referred to as buildings, it is clear that the appellants were entitled to a license to operate a junk yard on their proposed site for one year.

It is urged by appellee that although this court may come to the conclusion that there has been a technical compliance with the letter of the law, still the writ should not issue because the fiscal year of the City of Pontiac having ended April 20, 1920, the question has become merely academic, and a writ of mandamus should not issue in any case where it will prove unavailing or fruitless. But the ordinance in question provides that a license may be issued for one year,

and makes no reference to the fiscal year of the city. Moreover, the application for a license was made to the Mayor on the 2nd day of July, 1919, and the year which applicant's license would have covered if it had been issued had not expired when the same was heard in this court. We do not therefore regard the point as well taken.

For the errors indicated, the judgment of the circuit court is reversed and the cause remanded with directions to order the writ of mandamus.

*Reversed and remanded with directions.*