CELEBRITY CLUB, INC., a Utah Nonprofit Corporation, Plaintiff,

v.

UTAH LIQUOR CONTROL COMMISSION, Defendant.

No. 16083.

Supreme Court of Utah.

Oct. 22, 1979.

Robert J. Stansfield, Salt Lake City, for plaintiff.

Robert B. Hansen, Atty. Gen., John S. McAllister, Asst. Atty. Gen., Salt Lake City, for defendant.

MAUGHAN, Justice:

Before us is a petition of the Celebrity Club, Inc., seeking relief from an order of the Utah Liquor Control Commission. The appeal is made pursuant to 32–1–32.6, U.C.A., 1953. The Commission denied the Club's application for a license which would allow it to provide for the consumption and storage of liquor, and to have a state liquor store on its premises.

We hold the Commission is estopped to deny a license to the petitioner, on the ground its facilities fall within the 600 foot proscription of 16–6–13.5. We remand for appropriate proceedings, pursuant to this opinion. All statutory references are to U.C.A., 1953, unless otherwise indicated.

Petitioner, a nonprofit corporation, applied to the Commission for a license pursuant to 16–6–13.1, et seq., wherein the Commission is authorized "to issue a license to a social club, recreational, athletic, or kindred association . . . which maintains or intends to maintain premises upon which liquor is or will be stored, consumed or sold . . . ." The Commission accepted and adopted the recommendation of Kenneth F.

Wynn, its Director, that the application be denied by reason of the 600 foot restriction of 16–6–13.5, as amended 1977.

These restrictive provisions in 16–6–13.5 state:

. . . but no original license shall be issued to any social club, recreational, athletic or kindred association where it is located within a radius of 600 feet of any public or private school, church, library, public playground or park unless the commission finds after full investigation, that the premises is located within a city of the third class or a town . . . .

The Celebrity Club is located at 1037 East 3300 South in Salt Lake City, Utah. A private school, the Salt Lake Junior Academy is located at 3370 South 900 East; however, the property owned by the school extends in an easterly direction into the interior portions of the block. Prior to the construction of the necessary improvements required by statute and the rules and regulations of the Commission, petitioner contacted the compliance agents of the Commission regarding application of the 600 foot restriction to its situation. The agents advised petitioner the location of the state liquor store would have to be changed to comply with the statute, viz., to exceed the 600 foot proscription. Accordingly, petitioner modified its proposed location of the store. A subsequent physical inspection was made and petitioner was advised the new location was in compliance with the law, and a license could issue upon completion of numerous other conditions required prior to submission of an application.[1] A survey was made which indicated the nearest corner of the playground adjacent to the school building to the location of the proposed state liquor store was 622 feet.

On September 16, 1977, petitioner received the following letter:

Pursuant to your letter dated September 14, 1977, the Utah Liquor Control Commission reviewed the status of your application in relation to Section 16–6–

1. A letter in the record from Director Wynn to petitioner states that twenty four exhibits must be submitted correctly and simultaneously before the Commission will accept an application.

13.5, Utah Code Annotated, 1953, as amended (the 600 foot requirement).

The Utah Liquor Control Commission reviewed the survey you submitted. Survey was accomplished by AAA Engineering and Drafting, Incorporated. Under the present interpretation of the statute by the State Attorney General's Office, the location of the proposed liquor store in your proposed private club facility satisfies the 600 foot requirement.

The plot plan you submitted completes one of the requirements for your application to be considered. The Utah Liquor Control Commission will consider your application for a private locker club license *only* when all statutory and Commission requirements have been met.

> Sincerely,
> Utah Liquor Control
> Commission
> Dennis R. Kellen,
> Administrator

In reliance on the representation of the Commission that its plot plan complied with the 600 foot requirement of 16–6–13.5, as amended 1977, petitioner expended upwards of $200,000 to complete its club. On February 21, 1978, petitioner completed the requirements to submit its formal application and filed it.

In response to the request of Director Wynn, the Attorney General's Office issued an opinion on March 28, 1978, interpreting the 600 foot rule under 16–6–13.5 and 32–1–36.15. This opinion recited the prior opinion of November 15, 1976, did not consider 16–6–13.5 and did not address itself to some specific questions. Although the opinion failed specifically to designate the matter, prior to the effective date of May 10, 1977, of the amendment to 16–6–13.5, this section did not specify a footage requirement. Previously the relevant provisions stated:

> . . . except that no license shall be issued to any club or association which establishes or intends to establish such premises in the *immediate proximity* of any existing school, church, library, public playground or park. [Emphasis supplied.]

The prior 1976 opinion had interpreted 32–1–36.15(2)(a), which provided:

> No state store or package agency shall be located (this term was changed to "established" by an amendment in 1977) within a radius of 600 feet of any public or private school, church, library, public playground, or park . . .

The 1978 opinion stated, where a club or restaurant occupied the entire building, the 600 foot radius should be measured from the outside wall of the building nearest to the school, church, or park. If the club or restaurant were situated in a multi-use building, the 600 feet is measured from the wall within the building nearest to the school, church or park.

The 1978 opinion reiterated the statements in the 1976 opinion concerning the location of the points of measurement of the school. The point is located on the nearest wall of the building in the case of a school or church without a playground. In the case of a public playground or park, the point is located on the boundary. In the case of a school with a playground, the point is located on either the wall of the building or the boundary of the playground, depending on which is closer to the wall of the proposed club or restaurant. If the school, church, etc. is bordered by property belonging to the entity, but not in use, the general rule limits the statutory definition (school, church, etc.) to that property and buildings actually used for worship, school, or playground purposes.

The record indicates the school (Salt Lake Junior Academy) owns property adjoining the playground on its eastern boundary. A storage building was erected on this apparently unused property in the latter part of 1977. The residents of the area had a survey made, the point of measurement was taken from the northeast corner of the allegedly unused property, rather than from the corner of the more distant playground. The difference in the point of measurement creates a 48 foot discrepancy in petitioner's survey. Petitioner's opponents claimed, although the school property in dispute was undeveloped, it was used for school purposes.

Director Wynn, in a memorandum to the Commission, dated September 7, 1978, observed, in view of the opinion of the Attorney General of March 28, 1978, and the surveys submitted in connection with the application, the applicant is within 600 feet of a school playground; and recommended the application be denied.

At a meeting before the Commission on September 15, 1978, representatives of the school stated the undeveloped land was used for school purposes, viz., utilized for ecology studies and agricultural training. The effect of such statements on the Commission is not apparent, since the Commission specified its denial was based on the prior recommendation of its Director, Mr. Wynn.

On appeal, the parties' dispute focuses on the proper interpretation of 16–6–13.5, as amended 1977, as to the location of the point from which the measurement of 600 feet should extend and the location of the terminus of the licensed facility closest to the school.

16–6–13.5 proscribes the issuance of an original license "to any social club . . . where it is located within a radius of 600 feet of any public or private school . . ."

A "radius" is defined as a line segment extending from the center of a circle or sphere to the curve or surface.[2] Thus, the term "radius" in its natural meaning implies a circle with a center point, from whence the radius extends equidistantly in all directions. In some of those cases where the issue has arisen, the term "radius" has been interpreted in the geometrical sense, and the center from which it extends has been located in the center of the object, indicated as the geographical location for purposes of measurement. In *Mead v. Anton*[3] one of the issues was the location of the starting point of the radius. The court stated:

. . . The bill of sale provides that respondents should not enter into competition with appellants 'within a radius of five hundred (500) yards of the present location of the Perkins Building,' while the assignment of the lease defines the distance as 'within a radius of Five Hundred Yards from the existing restaurant.'

\*   \*   \*   \*   \*   \*

We disregard the survey made from the northwest corner of the Perkins building, as the distance from that point is immaterial. The center of the circle, within which respondents were prohibited from competing with appellants, should be located either at the center of the Perkins building or, more probably, at the center of Anton's Coffee Shop in that building. . . .

Cases setting forth an interpretation of the term "radius" as employed in contracts, statutes or ordinances as descriptive of an area, location or distance can be found in an annotation in 10 A.L.R.2d 605. The annotation provides:

Following the commonly accepted meaning of the term, the view has been taken that where a contract defines a prohibited territory as being within a radius of a certain number of miles from a certain place, the parties intended the utmost limit of the territory to be an equal distance from that place in every direction. An agreement not to practice dentistry within a "radius" of ten miles of Litchfield has been construed as excluding the practice of dentistry by the promisor within ten miles in every direction from the center of the village of Litchfield, and not within ten miles from the extreme boundaries of the village. . . .[4]

The term 'within' as used in the phrase 'within the radius' of a certain distance from a certain place has been construed as including all territory falling within

---

2. Webster's Third New International Dictionary.

3. 33 Wash.2d 741, 207 P.2d 227, 234–235, 10 A.L.R.2d 588 (1949).

4. Id. at p. 606.

the measured circle. In *Sachs v. Legg* (1920) 219 Ill.App. 144, wherein an ordinance provided that no junk shop should be licensed on any site where two-thirds of the buildings within a radius of three hundred feet of the proposed site were used exclusively for residence and retail store purposes, or used exclusively for residence purposes, without the written consent of a majority of the property owners, according to the frontage, within a radius of three hundred feet of the proposed site, was construed as including all buildings located at all points inside the limits of three hundred feet of the proposed site, including a building on the proposed site. The court said that a radius is a straight line from the center of a circle or sphere to its periphery or surface, and a periphery is the circumference of a circle, and that the word 'within' was used as a preposition in the sense that the whole territory embraced within the limits of the three hundred feet should be included.[5]

In construing 16–6–13.5 another factor to be considered is that prior to 1977, this section proscribed the establishment of licensed premises "in the immediate proximity of any existing school . . . ." The amendment, in effect, specified by measurement the meaning of "immediate proximity."

This Court has frequently set forth its duty to give effect, if such can be reasonably done, to every word, clause and sentence of a legislative enactment.[6] Under this principle the phrase "within a radius of 600 feet of any public or private school" would be interpreted literally and the term "radius" would be construed in its geometric sense, viz., the radius would extend from the center of the school, equidistantly in all directions and not from the boundary of the land used ·for school purposes. It could be further argued, if the legislature so intended, it could have expressed the proscription by stating "where it is located within a straight line distance of 600 feet from the boundary of any public or private school." Nevertheless, there is a corollary to the aforecited principle of statutory interpretation: a statute is presumed not to be intended to produce absurd consequences, and where possible it will be given a reasonable and sensible construction. This Court has the duty to construe the law to promote the protection of the public.[7]

Included within the protected classification of 16–6–13.5 are libraries, public playgrounds and parks as well as schools and churches. Since it is reasonably probable that some of these facilities might occupy a large parcel of land devoted to their protected purposes, a 600 foot radius extending from the center might not reach the boundary of the facility. Under such circumstances the intended protection of the statute would be nullified. Such an interpretation would produce absurd consequences and fail to protect minors, as well as violate the expressed legislative policy of 32–1–4, which recognizes the rights of citizens who do not wish to be involved with alcoholic products. Thus, the practical interpretation of 16–6–13.5 by the Attorney General concerning the location of the point from which the measurement of the protected area should be made is consonant with the purpose of the statute.

In the present case, there was a conflict as to whether the undeveloped land of the Salt Lake Junior Academy was used for school purposes and, therefore, whether its boundary or the boundary of the playground constituted the appropriate point of measurement. This factual dispute was not resolved by any specific finding of fact. Generally, under such circumstances, the matter would have to be reversed for a factual determination; however, in this case petitioner has invoked the doctrine of estoppel, which is an appropriate solution in this situation and will be discussed infra.

**5.** Id. at p. 607.

**6.** *Gibb v. Dorius*, Utah, 533 P.2d 299, 302 (1975); *Maw v. Lee*, 108 Utah 99, 107, 157 P.2d 585 (1945).

**7.** *Curtis v. Harmon Electronics, Inc.*, Utah, 575 P.2d 1044, 1046 (1978).

Insofar as the location of nearest point of the licensed facility to the protected area is concerned, the 1978 opinion of the Attorney General is insufficient. A review of 16–6–13.5 clearly indicates the authority of the commission is to license the "premises upon which liquor is or will be stored, consumed or sold . . . ." There is no statutory basis to extend the authority of the commission to the entire building or grounds occupied by a social club, recreational, athletic, or kindred association.

16–6–12.1 states the definition of premises as used in this chapter shall have the meaning set forth in 32–1–3 of the Utah Liquor Control Act. Section 32–1–3, provides:

'Premises' means any room, enclosure, building or structure where alcoholic beverages may be lawfully manufactured, stored, sold, or consumed as provided in this act.

The intent of the legislature to confine the Commission's licensing authority to the *area* where liquor is stored, consumed or sold is further illustrated by the language of 16–6–13.6(1), wherein it is stated:

. . . Every application shall contain a floor plan of the building indicating that part of the building where it is proposed to keep and store liquor or wine, the area provided for individual member lockers, the number thereof, and any other information the commission may require. No alterations may be undertaken in any part of the licensed premises where liquor is sold, stored or consumed, without the prior approval of the commission.

In a determination under 16–6–13.5 as to whether a license facility is situated within the proscribed area, the appropriate point of location is the nearest wall where liquor is stored, consumed, or sold.

Finally, petitioner contends the Commission is estopped to deny the license on the ground the licensed premises are within the 600 foot proscribed area of 16–6–13.5. The facts of this case are extremely important as providing a basis for an estoppel, for the courts must be cautious in applying equitable estoppel against the State, especially when the State is functioning in its governmental, as opposed to its proprietary capacity.[8]

Equitable estoppel may be applied against the State, even when it is acting in a governmental capacity, if necessary to prevent manifest injustice, and the exercise of governmental powers will not be impaired as a result. . . .[9]

■ The elements essential to invoke the doctrine of equitable estoppel are:

(1) an admission, statement, or act inconsistent with the claim afterwards asserted,

(2) action by the other party on the faith of such admission, statement, or act, and

(3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.[10]

■ In this case petitioner was faced with a new statute which contained an apparent ambiguity (16–6–13.5 as amended (1977)). In an effort to comply with the law, petitioner sought administrative guidance from the Commission. Agents of the Commission advised as to the appropriate alterations to the premises, which petitioner followed. The Commission issued a letter advising petitioner that its club facility satisfied the 600 foot requirement of 16–6–13.-

**8.** *Metropolitan Park District of Tacoma v. State Department of Natural Resources*, 85 Wash.2d 821, 539 P.2d 854 (1975).

**9.** *West v. Dept. of Social and Health Services*, 21 Wash.App. 577, 586 P.2d 516, 518 (1978).

**10.** Id. Also see *Morgan v. Board of State Lands*, Utah, 549 P.2d 695, 697 (1976): ". . . Estoppel arises when a party (de-

fendant Board) by his acts, representations, or admissions, or by his silence when he ought to speak, intentionally or through culpable negligence, induces another (plaintiffs) to believe certain facts to exist and that such other (plaintiffs) acting with reasonable prudence and diligence, relies and acts thereon so that he will suffer an injustice if the former (Land Board) is permitted to deny the existence of such facts."

5, as amended. Petitioner then expended, in reliance on the representation of the Commission, considerable funds to complete the club facilities, and fulfill the numerous requirements to complete its application. At this juncture the Commission is estopped to deny the license on the ground petitioner's facilities do not comply with the 600 foot requirement of 16–6–13.5.

The case of *State v. Sponburgh*,[11] wherein the court ruled the State Liquor Control Board was estopped to deny applicant's license, has particularly appropriate language for this case:

> The doctrine of equitable estoppel is properly applicable in a case such as this, otherwise the whim of an administrative body could bankrupt an applicant who acted in good faith in reliance upon a solemn written commitment.
>
> \* \* \* \* \* \*
>
> The conduct of government should always be scrupulously just in dealing with its citizens; and where a public official, acting within his authority and with knowledge of the pertinent facts, has made a commitment and the party to whom it was made has acted to his detriment in reliance on that commitment, the official should not be permitted to revoke that commitment.
>
> \* \* \* \* \* \*

HALL and STEWART, JJ., concur.

CROCKETT, Chief Justice (concurring with comments):

The Court's decision impresses me as being correct and justifiable under the particular facts. But I am impelled to express some reservation as to the application of the doctrine of estoppel against the state or its agencies. See reasoning and citation of authority in *Breitling Bros. v. Utah Golden Spikers, Inc.*, Utah, 597 P.2d 869 (1979).

As noted therein, those charged with the responsibility of handling the business of the state should deal with others with fairness and good conscience. For that reason, I agree that in rare exigencies, where the interests of the public are not severely and adversely affected, and where otherwise some grave injustice may result, that the principle of estoppel may be applied.

To be considered in conjunction with the foregoing is the proposition that statutes should be given a sensible and practical application in accordance with their purpose. In this instance, that purpose seems to be to protect school students from possible improper influences that may emanate from a club which serves liquor. If the measurement were made from the school, and the area actually frequented by the students, to the area of the petitioner's property involved in the sale and drinking of liquor, there would be no violation of the 600-foot restriction. This is even more true if measured by the circuitous street travel necessary to get from one to the other, rather than taking the cross-fence crow-fly route. I think the position first taken by the Commission, that there would be no violation of the statute by petitioner, was sensible and practical; and that there should be involved no serious hazard to public welfare or morals because of a discrepancy of a few feet, depending upon how the measurement is made.

WILKINS, Justice (concurring with reservation):

I concur with reservation.

I believe petitioner should prevail and thereby not be denied a license in this case. And I concur in the reasoning and authorities of the majority opinion for this result which pertain to the Commission's being estopped from denying a license in this unusual case.

I respectfully suggest though that other stated grounds in the majority opinion for the Court's conclusion are not necessary, the doctrine of estoppel being completely dispositive herein.

---

11.  66 Wash.2d 135, 401 P.2d 635, 640 (1965).