Dale A. ELDREDGE, Petitioner,

v.

**UTAH STATE RETIREMENT BOARD, Respondent.**

No. 880583–CA.

Court of Appeals of Utah.

June 21, 1990.

L. Zane Gill (argued), Law Office of L. Zane Gill, P.C., Salt Lake City, for petitioner.

Mark Madsen (argued), State Retirement Bd., Salt Lake City, for respondent.

Before DAVIDSON, JACKSON and LARSON,[1] JJ.

## OPINION

JACKSON, Judge:

Dale A. Eldredge (Eldredge) appeals an order of the Utah State Retirement Board (Board) that reduced his future monthly retirement benefit payments and required him to repay a portion of benefits previously received unless he purchased credit for 6.123 years of pre-July 1961 public employment. We vacate the order and remand.

## FACTS

The relevant facts were undisputed below, and Eldredge does not challenge the findings of the adjudicative hearing officer, adopted in full by the Board. Eldredge was employed by Salt Lake County from January 1, 1955, until February 15, 1961, for a total of 6.123 years. He was rehired on May 1, 1967, and worked continuously until July 1, 1987, when his retirement became effective.

In May 1986, Eldredge received from the County an information bulletin, which advised:

All County employees receive a yearly statement from the Utah State Retirement Office stating how much money is in their account and how much service time is credited to their names. Employees who worked for the County for at least 90 days between July 1, 1960 and June 30, 1961 OR who worked a full year between July 1961 and July 1967 can receive service credit for qualifying employment prior to July 1961. If you think you should be credited with additional service time, contact the Utah State Retirement Office at 355-3884.

Eldredge observed that he would have over twenty-five years of service and could retire, if he was credited with his initial 6.123 years of County service. He went to the Utah State Retirement Office and consulted with Tamera Wilson, an accounting technician employed by the Board. She said she would check and advise him. Approximately two weeks later, she sent him a letter stating that he would have to purchase his first 6.123 years of service in order to retire. Shortly after receiving the letter, Eldredge happened to see Dee William, a representative of the Utah State Retirement Office, at the County office. They discussed the notice in the County information bulletin. According to Eldredge's unrefuted testimony, William said, "[I]t looks like you might be entitled to those years ... I don't know the law, I'll have it checked into...." He told Eldredge to call Lois Daly at the Utah State Retirement Office in a week or so. Eldredge eventually called Daly and was told, "I've got good news for you ... you're entitled to those years." Daly told Eldredge that, after talking to Mr. Sharp, a deputy director at the Retirement Office, and three or four other people, "We've got it straightened out where you people that are entitled to that time are going to get it." Daly told Eldredge that Wilson would be sending him a letter.

The promised letter from Wilson, dated September 11, 1986, stated:

This letter is in regards to your service with Salt Lake County. After further questioning of the law, it appears our office's original interpretation of the law was incorrect.[2] You do not need to purchase your service with Salt Lake

---

1. John Farr Larson, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann.· § 78-3-24(10) (Supp.1989).

2. In determining Eldredge's years of "creditable service rendered prior to July 1, 1961," Utah Code Ann. § 49-10-17(a) (1981) (now see Utah Code Ann. § 49-1-401 (1989), under the prior

County from January 1, 1955 through February 15, 1961.

This service has already been posted to your account and is accounted for in your "Members Annual Statement." A copy of your statement is enclosed for your convenience. Please be aware all service is estimated until retirement at which time it is verified.

The staff of the Retirement Office is happy to be of assistance to you. If you have any further questions, please feel welcome to contact our office.

Eldredge's years of service as of September 11, 1986, were shown on the enclosed membership statement, prepared by Wilson, as:

| | |
|---|---|
| Years of service forward | 24.790 |
| Years of service awarded this year | 0.630 |
| Total years of service | 25.420 |

In 1987, the Utah Legislature enacted House Bill 142, Utah Code Ann. § 49–2–802 (1989), opening an early retirement window for those public employees with twenty-five years of credited service, regardless of their age. *Cf.* Utah Code Ann. § 49–2–401 (1989). In reliance on the Board's representations that his 6.123 years of County employment before July 1961 would be credited to his years of service at no cost to him, Eldredge submitted a retirement application to the Retirement Office in the spring of 1987, to take effect July 1, 1987. The Board sent Eldredge a retirement benefit estimate dated March 16, 1987, based on a July 1 retirement date and 26.290 total years of credited service to that date. The monthly estimates ranged from $1,463.39 to $1,606.34, depending on the particular benefit payment plan selected. Eldredge selected Plan 4, with an estimated monthly benefit of $1,537.91 and a 50% continued payment to his spouse upon his death. Although their monthly house and car payments totalled $1,128, Eldredge testified he and his wife felt they could make ends meet on the $1,537.91 monthly benefit, so he retired at age 52 under Plan 4 after resigning from his $37,000 a year position as an area supervisor.

The Board paid Eldredge retirement benefits based on 26.290 years of service, in accordance with his selection of Plan 4, until September 9, 1987, when the Board sent him a letter stating:

In a recent audit of your file, we noted that your retirement benefit effective July 1, 1987, was calculated to include 6.123 years of service that you rendered prior to July 1, 1961.

This service, by law, cannot be credited to your account unless it is purchased.[3] Enclosed are two calculations of the cost to purchase that prior service. One amount reflects the cost for all 6.123 years. The other calculation reflects 4.833 years which is what you would need to purchase to give you a total of 25 years.

We will still allow you to retire under HB 142 even if you do not purchase the service prior to July 1, 1961.[4] However, in that case, your monthly benefit will be based on your actual service and will equal approximately $1,246.00 under Plan 4. We will deduct $4.64 each month

retirement statute, 1961 Utah Laws ch. 100, § 18, the Retirement Office considered irrelevant the fact that Eldredge was not employed by the County on July 1, 1961. Section 18 granted credit for all prior service to:

(1) Each member of the retirement system who was engaged in performing covered services for an employing unit subject to the act on July 1, 1961 and who performed services for at least ninety days during the period commencing July 1, 1960 and ending June 30, 1961 for [an employing unit].

Purchase of non-creditable public service is governed by Utah Code Ann. §§ 49–2–407 and 49–3–407 (1989).

**3.** There is no explanation in the record for the change in the Retirement Office's view of the importance of Eldredge's non-employed status on July 1, 1961. See note 2, *supra*.

**4.** We have found no basis in our retirement statutes for the Board's continued grant of early retirement to Eldredge with fewer than twenty-five years of credited service.

from that amount for the lump-sum death benefit coverage.

If you select to purchase the 4.833 years, your Plan 4 monthly benefit will be approximately $1,545.00 less the death benefit deductions.

In any case, there will be an adjustment in your monthly benefit but it will not be retroactive. It will begin with your September retirement check paid at the end of September. We would appreciate hearing from you as soon as possible.

The enclosed calculations stated that Eldredge could purchase his 6.123 prior years of service by paying $33,931.02, or he could purchase 4.833 years of service, for a total of exactly twenty-five years of service, for $25,435.89. If he failed to make either of these purchases, his monthly benefit was to be reduced to $1,246 from $1,538.

Eldredge formally requested credit for the 6.123 years, without having to purchase them, but the executive director of the Board denied the request. Eldredge then asked for a review of the director's decision by an adjudicative hearing officer, claiming that the Board was estopped from denying his eligibility to retire without having to pay to obtain service credit for the 6.123 years. He based this claim on the erroneous representations of Board personnel on which he had reasonably relied in making his irrevocable decision to give up his job and retire. Because he could not be restored to the status quo,[5] Eldredge contended the Board should be estopped from conditioning his continued receipt of $1,538 in monthly retirement benefits on payment of $33,931.02.

In his findings and conclusions, the hearing officer noted that the factual basis for estoppel was undisputed, but he interpreted Utah Code Ann. §§ 49–1–603(1) and –610(1) (1989) as precluding application of the doctrine of estoppel. The pertinent portion of section 49–1–610(1) provides: "All members of a [retirement] system, plan, or program shall acquaint themselves

with their rights and obligations as members." Section 49–1–603 provides:

If any error in any records or in any calculation of the retirement office results in any member or beneficiary receiving more or less than the member or beneficiary would have been entitled to receive if the records or calculations had been correct, the administrator shall correct the error, and, as far as practicable, make future payments in such a manner that the actuarial equivalent of the benefit to which the member or beneficiary was entitled shall be paid, and to this end may recover any overpayments.

The hearing officer interpreted these statutory sections as, in the words of the Board's attorney, "anti-estoppel" provisions completely barring application of the doctrine of equitable estoppel against the Board. The hearing officer concluded:

To hold that the Retirement Board is estopped from correcting its error and that the petitioner is not required to ascertain his own rights is to disregard specific legislative directives. This the Retirement Board. cannot do under our system of law.

The September 1988 order of the adjudicative hearing officer denying Eldredge's claim, which sought credit for the pre-July 1961 years of service without payment of $33,931.02, enforced the terms and conditions of the September 9, 1987 letter to Eldredge from the Board. After a review conducted pursuant to Utah Code Ann. § 49–1–610(2) (1989), the Board adopted in full the adjudicative hearing officer's findings, conclusions, and order.

In his petition for review, filed pursuant to Utah Code Ann. § 63–46b–14 (1989), Eldredge claims that he has been substantially prejudiced by the Board's erroneous statutory interpretation. *See* Utah Code Ann. § 63–46b–16(4)(d) (1989). Whether sections 49–1–603(1) and –610(1) of the Retirement Act, correctly interpreted, shield the Board from being estopped to deny any representation is an issue that does not

---

**5.** Eldredge cannot return to his county job, which is not available, and he is of questionable employability elsewhere because, as he pointed out at the hearing, "not many people hire a 53-year-old man with a bad back [who] can't walk or stand very long."

turn on any issues of fact; neither does it require the agency's experienced construction of any terms of art peculiar to its domain or of any words of uncertain meaning that may be clarified by reference to the facts to which they are to be applied. *See Heaton v. Second Injury Fund,* 796 P.2d 676 (Utah 1990); *see also Chris & Dick's Lumber & Hardware v. Tax Comm'n,* 791 P.2d 511, 513–14 (1990); *Hurley v. Industrial Comm'n,* 767 P.2d 524, 526–27 (Utah 1988). Instead, the Board's interpretation of sections 49–1–603(1) and –610(1) as absolutely precluding it from being estopped presents an issue of law, to which this court applies a correction-of-error standard, giving no deference to the Board's legal conclusion. *See Heaton,* at 679; *Chris & Dick's Lumber & Hardware,* at 513–14; *Bevans v. Industrial Comm'n,* 790 P.2d 573 (Ct.App.1990); *see also Hurley,* 767 P.2d at 526–27.

## EQUITABLE ESTOPPEL

■ As a general rule under case law, the doctrine of estoppel is not assertable against the state and its agencies. *Utah State Univ. v. Sutro & Co.,* 646 P.2d 715, 718 (Utah 1982). Utah courts have, however, carved out an exception to this general common law rule in unusual circumstances "where it is plain that the interests of justice so require." *Id.* at 720; *see, e.g., Celebrity Club, Inc. v. Utah Liquor Control Comm'n,* 602 P.2d 689 (Utah 1979). "In cases where such an issue arises, the critical inquiry is whether it appears that the facts may be found with such certainty, and the injustice to be suffered is of sufficient gravity, to invoke the exception." *Utah State Univ.,* 646 P.2d at 720.

■ The elements essential to invoke equitable estoppel are: (1) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (2) reasonable action or inaction by the other party taken on the basis of the first party's statement, admission, act, or failure to act; and (3) injury to the second party that would result from allowing the first party

to contradict or repudiate such statement, admission, act, or failure to act. *CECO Corp. v. Concrete Specialists, Inc.,* 772 P.2d 967, 969–70 (Utah 1989); *Celebrity Club,* 602 P.2d at 694; *Utah Dep't of Transp. v. Reagan Outdoor Advertising, Inc.,* 751 P.2d 270, 271 (Utah Ct.App.1988).

■ Before the hearing officer, counsel for the Board virtually conceded that the facts of this case establish the requisite elements of estoppel. He stated:

> I even concede, for the purposes of this hearing, that Mr. Eldredge was disadvantaged. I even concede he got a low blow, I'm willing to put it in that terminology, I just in fact think that it was a terrible mistake to make. And I'm not going to sit here and argue before you or anybody else that Mr. Eldredge hasn't got anything to complain about. I think that he has, and I concede out of hand that he does.

In the decision adopted by the Board, the hearing officer accepted this argument:

> [I]t is undisputed that petitioner acted to his detriment based on an erroneous representation of an employee of the Retirement Board. The amount in question would not be significant insofar as society is concerned but may be of significant importance to the applicant. Absent any law to the contrary, the Retirement Board might well be estopped from refusing to continue to give the applicant the benefit of the 6.123 years in question.

In light of his legal conclusion that the statute prohibited application of the estoppel doctrine, the hearing officer apparently thought it unnecessary to frame findings of fact in terms of the requisite elements for estoppel. We, however, conclude as a matter of law that Eldredge established all the elements necessary to estop the Board from denying its representation that he could retire with 26.920 years of credited service without having to purchase his 6.123 years of service rendered before July 1961.

The position of petitioner Eldredge is like that of the liquor license applicant in *Celebrity Club.* There, the petitioner was faced with the Liquor Control Commission's dif-

fering constructions of the ambiguous phrase "within a radius of 600 feet of any ... school." The statute governing Eldredge's retirement credit for service prior to July 1961 was given two opposite interpretations by the Retirement Office. *See* notes 2 and 3, *supra.* Celebrity Club, Inc. sought administrative guidance from the Liquor Control Commission about the statute's applicability to its situation before applying for the license. Eldredge sought similar guidance from the Retirement Board before retiring. The Commission issued a letter advising Celebrity Club, Inc. that its planned facility satisfied the statutory distance requirements. The Board, with all the correct facts before it, issued documents advising Eldredge that he satisfied the statutory requirements and did not have to purchase 6.123 years of prior service. Celebrity Club, Inc. relied on the representation of the Commission and expended about $200,000. Eldredge relied on the representations of the Board and resigned a $37,000 a year position, which he cannot regain. Regardless of whether Celebrity Club, Inc. was in actual compliance with the liquor licensing statute, as definitively interpreted by the Utah Supreme Court, the Commission was estopped to deny its representation that Celebrity Club, Inc. was in compliance with the 600 foot distance requirement for a liquor license. Likewise, we conclude that the Board is estopped to deny its representation that Eldredge had met the requirements for obtaining prior service credit for his 6.123 years of County service from January 1955 through February 1961.

In *Celebrity Club*, the court supported application of estoppel by quoting with approval the rationale given in a similar Washington case. First, the Utah court reasoned, failure to apply the doctrine could allow the whim of an administrative body to bankrupt Celebrity Club, Inc., which had "acted in good faith in reliance upon a solemn written commitment." 602 P.2d at 695 (quoting *State ex. rel. Shannon v. Sponburgh*, 66 Wash.2d 135, 401

P.2d 635, 640 (1965)). Eldredge also relied in good faith upon the Board's solemn written commitments and gave up a $37,000–per–year job. Now the Board wants to reduce its commitment to him by $3,600 annually ($72,000 over his twenty-year life expectancy), or require him to pay almost $34,000, which would bankrupt Eldredge.

Second, the government should be scrupulously just in dealing with its citizens:

> [W]here a public official, acting within his authority and with knowledge of the pertinent facts, has made a commitment and the party to whom it was made has acted to his detriment in reliance on that commitment, the official should not be permitted to revoke that commitment.

*Id.* (quoting *Sponburgh*, 401 P.2d at 640). Here, the Board had authority to set up Eldredge's retirement and grant him prior service credit, and it did so. Eldredge relied thereon to his substantial detriment and cannot now revoke his action and recover his prior status. To permit the Board to disavow its representations would work a serious and manifest injustice on Eldredge. On the other hand, the interest of the public would not be unduly threatened or damaged by estoppel of the Board.[6] *See Utah State Univ.*, 646 P.2d at 720; *Celebrity Club*, 602 P.2d at 694.

Two other considerations not present in *Celebrity Club* strengthen Eldredge's case for estoppel. The critical nature of the irrevocable, once-in-a-lifetime retirement decision of a public employee imposes a strict duty of certitude upon those charged with the supervision and implementation of the system. "[A] governmental body, charged with as important a function as the administration of a public employees retirement system, bears a most stringent duty to abstain from giving inaccurate or misleading advice." *Nevada Public Employees Retirement Bd. v. Byrne*, 96 Nev. 276, 607 P.2d 1351, 1353 (1980). In addition, as noted in *Celebrity Club*, 602 P.2d at 694, the courts must be more cautious in applying equitable estoppel against the

---

6. At the hearing below, the Board's counsel stated: "Let me say to you up front that it isn't [going to hurt the Retirement Board]. The Retirement Board's got a lot of money, its got so much money the State's always after it...."

State when it is functioning in a governmental, as opposed to a proprietary, capacity. Here, the Board was exercising a proprietary function, so less caution is required. "It must be remembered that when the State functions in its proprietary capacity, it will receive no better treatment than any two private individuals who bring their dispute before the courts for final resolution." *Metropolitan Park Dist. v. Department of Natural Res.*, 85 Wash.2d 821, 539 P.2d 854, 859 (1975).

■ The Board regarded this case as controlled by section 49–1–603, concluding that the legislature thereby intended to prohibit the Board from being estopped based on any representation, even if the person to whom it was made reasonably relied on it to his or her substantial detriment. Before this court, the Board divines the legislative intent of section 49–1–603 as follows:

> Doubtless the Legislature recognized that ministerial mistakes in record-keeping and benefit calculations would sometimes occur. Its public policy determination with respect to any errors committed is clearly set out under the statute, and thus, the statute is anti-estoppel in nature.

In interpreting a statute, we look to the plain meaning of the language at issue to discern the legislative intent. *Chris & Dick's Lumber & Hardware*, at 513–14. Section 49–1–603 authorizes the retirement system administrator to correct erroneous benefit payments and collect overpayments "[i]f any error in any records or in any calculation of the retirement office results in any member or beneficiary receiving more or less than the member or beneficiary would have been entitled to receive if the records or calculations had been correct...." It may well be that, in enacting section 49–1–603, the Utah Legislature was declaring that any detrimental reliance on a representation concerning the amount of benefits to which a retiree was entitled was per se unreasonable if that representation was made on the basis of incorrect records or calculations. However, we need not reach this issue of the "anti-estoppel" ef-

fect of the statute in such circumstances, because the instant case clearly does not involve "any error in any records or in any calculation of the retirement office." Eldredge was not the victim of incorrect records or inaccurate benefit calculations. The Board's records were correct, and it knew the facts about Eldredge's prior service. After specific consideration of the precise question of whether those 6.123 years had to be purchased by Eldredge in order to be used for retirement credit, the Board, using correct facts and records, represented to him that he was eligible to retire with 26.290 credited years and to receive $1,538 in monthly benefits without purchase of any years of service. We find no support in the language of this section or other parts of the Retirement Act to support the Board's broad interpretation of section 49–1–603 as immunizing the Board from the consequences of all of its representations to a prospective retiree, even those that do not result from incorrect records or calculations.

The Board has cited one case in support of its "anti-estoppel" position, *Flanigan v. West Virginia Public Employees' Retirement Sys.*, 342 S.E.2d 414 (W.Va.1986). The legal question presented there was, in the words of the court, "whether the petitioner is entitled to enroll in the Public Employees Retirement System and, if so, under what "terms and conditions?" *Id.* at 417. The court held that Flanigan reasonably relied on the state employee's erroneous representation to him that he was not eligible to participate in the retirement system; therefore, the retirement system could not refuse to enroll him retroactively in the system once he realized that he was in fact eligible to participate. *Id.* at 419–20. Although the West Virginia court required Flanigan to purchase prior years of service in accordance with the retirement statutes, there had been no representation to Flanigan that he would not have to do so. Thus, there was no basis for estopping the retirement system and excusing Flanigan from complying with that requirement.

Because of the similarity of the factual circumstances and the statutory argument, we find the case of *Nevada Public Em-*

*ployees Retirement. Bd. v. Byrne,* 96 Nev. 276, 607 P.2d 1351 (1980), to be more apposite. In 1972, the Nevada Retirement Board advised Byrne that he had accrued 16.25 years of covered service and would qualify for an unmodified monthly retirement benefit of $504.49. Later, Byrne was advised that his benefits would be $725.35 and that he would complete twenty years of covered service on October 24, 1975. Relying on those representations, Byrne retired effective on that date and resigned from his $23,000 per year position as Assistant Clark County Assessor. He also sold his home and purchased another in California.

The Retirement Board then advised him that his recalculated benefit would be only $86.78 monthly. He protested, and the Board finally offered him $468.06. Byrne sought to estop the Board from denying its earlier representations to him as to his benefits. The Board's statements to Byrne were factual in nature and estoppel was invoked to require the Board to pay him the benefits as originally represented. On appeal, the Board argued that its statutory authority to "[a]djust service and make any correction of member, retiree or beneficiary records and benefits after an error or inequity has been determined" barred any reliance by Byrne on its representations. *Id.* at 1353. The Nevada Supreme Court rejected this statutory "anti-estoppel" argument:

> [W]e fail to see how the Board's power to correct "an error or inequity" prohibits a public employee, such as respondent, from relying on these types of factual statements, or prevents the courts of this state from raising an estoppel against it. We would turn the doctrine of equitable estoppel upon its head if we were to hold that the power to correct an inequity as unjust as the one here, would, without more, defeat our courts' inherent power to seek and to do equity.

We likewise find nothing in sections 49–1–603 and –610 that would bar application of estoppel against the Board to prevent a grave injustice to Eldredge, who reasonably relied on the Board's representation that he did not have to purchase 6.123 years of pre–1961 County service in order to receive retirement credit for them. Because we conclude that the Board incorrectly interpreted the statute as precluding any application of estoppel against the Board, we vacate its order. The case is remanded for entry of an order granting Eldredge credit for the 6.123 years of pre-July 1961 service that is not conditioned on his purchase of those years.

DAVIDSON and LARSON, JJ., concur.