Vincent MENDEZ, Plaintiff
and Appellant,

v.

STATE of Utah, DEPARTMENT OF SO-
CIAL SERVICES, Defendant
and Appellee.

No. 900151–CA.

Court of Appeals of Utah.

June 18, 1991.

Michael E. Bulson (argued) Utah Legal Services, Inc., Ogden, for plaintiff and appellant.

R. Paul Van Dam, State Atty. Gen., Richard Hummel (argued), Asst. Atty. Gen., Ogden, for defendant and appellee.

Before GREENWOOD, JACKSON and RUSSON, JJ.

GREENWOOD, Judge:

Appellant Vincent Mendez appeals a summary judgment entered in favor of the Utah Department of Human Services (DHS).[1] The judgment was entered upon Mendez's request for review of a DHS decision requiring him to pay $468 to DHS,

---

**1.** Formerly Department of Social Services, or    DSS.

representing an overissuance of food stamps by DHS to Mendez. We reverse and remand.

## FACTS

The following facts are undisputed. In April 1987, Mendez applied for food stamp assistance. He provided all the required application information to DHS, which administers the food stamp program in Utah. A DHS caseworker failed to take all of the application information into account when calculating Mendez's food stamp eligibility. Because of this administrative error, from April through June 1987 Mendez received $468 ($156 per month) more in food stamps than he would have received if his eligibility had been properly calculated. Mendez accepted and used the food stamps.

Subsequently, DHS discovered its error. In May 1988, DHS notified Mendez of its intention to recover the food stamp overissuance from him.[2] An informal hearing on the matter was held before a DHS administrative law judge (ALJ) in October 1988.

The ALJ issued her written "Findings and Order" in August 1989. In addition to making the undisputed findings that we have recited, the ALJ noted uncontroverted testimony by Mendez that, at the time he received the food stamps in question, he did not know that he was not entitled to the full amount.[3] Additionally, Mendez testified that repayment of the $468 would cause him great financial hardship.

Mendez sought to invoke equitable estoppel as a defense against DHS's effort to hold him liable for the food stamp overissuance. The ALJ, however, concluded that this defense was unavailable to Mendez, because of Utah Code Ann. § 62A–9–129 (1989). Under that statute, a recipient of benefits to which he or she is not entitled is liable to the state even if the benefits were received as a result of the state's administrative error.

The ALJ therefore entered judgment for DHS against Mendez for $468. Mendez then sought trial de novo of the DHS claim in the district court, again arguing that equitable estoppel should apply.[4] However, the district court agreed with the ALJ that, as a matter of law, section 62A–9–129 barred the defense of equitable estoppel to DHS efforts to recover erroneously issued assistance benefits. Accordingly, the court entered summary judgment in favor of DHS, effectively affirming the agency's $468 judgment against Mendez.[5]

## ISSUE AND STANDARD OF REVIEW

On appeal, Mendez argues that, contrary to the holdings of the ALJ and the district court, Utah Code Ann. § 62A–9–129 is not an "antiestoppel" statute. Therefore, Mendez argues that he should be allowed to raise the defense of equitable estoppel against DHS's effort to recover the value of the food stamp overissuance that occurred through DHS error.

2. In its May 1988 notice, DHS indicated that it was seeking to recover an overpayment of $562. This calculation, however, was also incorrect. At the October 1988 hearing on the matter, DHS stated that this was a "clerical error," and amended its repayment demand to $468.

3. We note this item apart from the undisputed facts because DHS, both in this court and in the district court where this matter was first reviewed, acknowledged the facts recited by Mendez only for purposes of the narrow legal issue involved here. The facts we recognize as undisputed are those which DHS admitted in answering Mendez's complaint in the district court.

It appears that on remand, DHS may wish to dispute Mendez's assertion that when he received the food stamps, he believed he was receiving the correct amount.

As discussed more fully in the main text, it will also be necessary on remand to make fur-

ther factual inquiry into the questions of whether equitable estoppel should apply, and if the elements of equitable estoppel can be met by Mendez.

4. Under Utah Code Ann. § 63–46b–15 (Supp. 1990), Utah's district courts have jurisdiction to review final agency actions from informal proceedings, as occurred here, by trial de novo.

5. DHS moved for judgment on the pleadings, under Utah R.Civ.P. 12(c). Because no matters outside the pleadings were presented to the court in connection with the motion, it appears that the court need not have styled its decision as a summary judgment. For purposes of appeal, because the sole issue presented is one of law, our review is unaffected by the styling of the district court's decision.

■ We review a trial court's interpretation of statutes on a correction of error basis, without deference. *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1038, (Utah 1989). Statutory interpretation by an administrative agency, where such interpretation does not require the agency's special expertise in the subject matter, is also reviewed without deference. *Hurley v. Bd. of Review of Indus. Comm'n*, 767 P.2d 524, 526–27 (Utah 1988).

## ANALYSIS

The relevant portions of Utah Code Ann. § 62A–9–129 (1989) read as follows:

(1) Any person who engages in any of the following acts is liable to this state for the value of all funds or other benefits received by any person as a result of those acts:

(a) receiving public assistance, medical benefits, or any other thing of value, under the provisions of this chapter, to which he was not entitled;

(b) cashing checks, using food stamps, or using medical cards which do not belong to that person, without proper authority, or without being entitled to the benefits thereunder;

. . . .

(4) The liability to this state set forth in this chapter arises whether the acts engaged in were due to the fraud, mistake, or administrative or factual error, intentional or unintentional, of any party.

■ Equitable estoppel is established by proof of three essential, core elements: (1) a party's statement, admission, act, or failure to act that is inconsistent with a later-asserted claim; (2) reasonable action or inaction by a second party, taken on the basis of the first party's statement, admission, act, or failure to act; (3) injury to the second party resulting from allowing the first party to repudiate its statement, admission, act, or failure to act. *CECO Corp. v. Concrete Specialists, Inc.*, 772 P.2d 967, 969–70 (Utah 1989); *Celebrity Club, Inc. v. Utah Liquor Control Comm'n*, 602 P.2d 689, 694 (Utah 1979); *Eldredge v. Utah State Retirement Bd.*, 795 P.2d 671, 675 (Utah App.1990).

■ Generally, equitable estoppel may not be invoked against governmental entities. The exception to this rule becomes operative when (1) necessary to prevent manifest injustice; and (2) the exercise of governmental powers will not be impaired as a result of the application of estoppel. *Celebrity Club*, 602 P.2d at 694; *Utah State Univ. v. Sutro & Co.*, 646 P.2d 715, 718 (Utah 1982); *Ehlers & Ehlers v. Carbon County*, 805 P.2d 789, 792 (Utah App. 1991). These two additional concerns or elements reflect the caution to be exercised in applying equitable estoppel against the state. *Celebrity Club*, 602 P.2d at 694.

■ DHS argues that the application of equitable estoppel requires a finding that the party to be estopped is at fault. *See Brown v. Minnesota Dep't of Public Welfare*, 368 N.W.2d 906, 910 (Minn.1985). Because section 62A–9–129 imposes liability upon the recipient of a food stamp overissuance even where fault for the overissuance lies with the issuing agency, DHS asserts that the statute bars the application of estoppel. We disagree with this characterization of section 62A–9–129 as an antiestoppel statute, because the statute does not address all the core elements of equitable estoppel.

The first two core elements of estoppel are adequately addressed by the statute. The "inconsistent statement or act" is the issuance of benefits at a certain level, which must be taken as a representation that the recipient is entitled to those benefits: subsection (4) of the statute places liability on the recipient even if benefits are issued through agency error. "Action by a second party" occurs when the recipient uses the improperly issued benefits: subsections 1(a) and 1(b) attach liability when the benefits are received or used.

■ The statute is silent, however, as to possible harm resulting from the imposition of liability on one who has accepted and used erroneously issued food stamps or other social assistance. Therefore, section 62A–9–129 does not clearly operate as an

antiestoppel provision.[6] Accordingly, we reverse and remand this case, so that Mendez can again raise his equitable estoppel defense against DHS's effort to recover the value of the food stamp overissuance from him. Specifically, because the parties do not dispute the first two, fault-related core elements of estoppel, Mendez must be allowed to present evidence that liability for the overissuance will harm him.[7]

On remand, proof of the core elements of estoppel alone will not necessarily help Mendez. The elements of "manifest injustice" and "no impairment of governmental powers," required for the application of equitable estoppel against a state agency, must also be established if he is to succeed. In their arguments on appeal, the parties dispute whether these elements are already made out: Mendez, focusing on the first element, asserts that imposition of liability on him would be manifestly unjust; DHS, stressing the second element, argues that Utah's ability to provide basic assistance to the needy through the federally funded food stamp program would be seriously impaired by allowing the application of equitable estoppel. We find both parties' arguments to be largely conclusory and lacking in record support. These issues can best be addressed on remand, by allowing assertion of the equitable estoppel defense and an opportunity to examine all of the necessary elements.[8]

## CONCLUSION

"If we say with Mr. Justice Holmes, 'Men must turn square corners when they deal with the Government', it is hard to see why the government should not be held to a like standard of rectangular rectitude when dealing with its citizens." Note, *Hobson's Choice and Similar Practices in Federal Taxation,* 48 Harv.L.Rev. 1281, 1299 (1935). If some corner-cutting is necessary in order to recoup erroneously issued benefits such as food stamps, the legislature may wish to authorize it. As things stand now, we find no per se bar to the application of equitable estoppel against DHS efforts to recover losses caused by its own mistakes.

The judgment of the district court is reversed, and the case is remanded for proceedings consistent with this opinion.

JACKSON and RUSSON, JJ., concur.

---

**6.** Nor do the federal regulations cited by DHS clearly operate to bar the application of equitable estoppel. Indeed, 7 C.F.R. § 273.15(a) (1990) provides, "each State agency shall provide a fair hearing to any household aggrieved by any action of the State agency which affects the participation of the household in the [food stamp] program." A fair hearing, in our view, includes an opportunity to raise a full defense to actions brought to impose liability upon food stamp recipients, unless specifically limited in some explicit manner.

**7.** As to the possibility of a dispute regarding the first two elements, see footnote 3.

**8.** The parties have not adequately briefed in this appeal, the extent to which Utah's participation in the food stamp program will be jeopardized, if at all, by allowing citizens to raise the defense of estoppel against liability for food stamp overissuance. For example, neither party has provided clear authority on whether the defeat of certain claims by the application of equitable estoppel would result in state ineligibility for future food stamp program participation, or would simply require the state to reimburse the federal government for uncollected overissuances. The command of 7 C.F.R. § 273.18(a) that a state agency "shall establish a claim against any household that has received more food stamp benefits than it is entitled to receive" tells us nothing about the consequences of a failure to establish such a claim.