2008 UT App 282

**Norman O. WHITAKER, Petitioner,**

v.

**The UTAH STATE RETIREMENT BOARD and The Utah Retirement Office, Respondents.**

No. 20061103–CA.

Court of Appeals of Utah.

July 25, 2008.

Phillip W. Dyer and Carey A. Seager, Salt Lake City, for Petitioner.

David B. Hansen and Liza J. Eves, Salt Lake City, for Respondents.

Before GREENWOOD, P.J., McHUGH and ORME, JJ.

## OPINION

ORME, Judge:

¶1 This case presents the interesting question of whether an individual concurrently employed full-time by two governmental entities may accrue toward retirement more than one year of service credit—i.e., two years of service credit, one for each job—in any given year. We conclude that he cannot.

## BACKGROUND

¶ 2 Norman O. Whitaker wants to retire. He is currently employed "full-time" by both the State of Utah and West Point City.[1] He began working for the State on April 15, 1989, and for the City on January 1, 1994. Before working for the City, he worked for the Davis and Weber County Canal Agency for 3.5 years. All of these employers, as governmental entities, participate in the retirement programs of the Utah State Retirement Systems. *See* Utah Code Ann. §§ 49–11–101 to –13–701 (2002 & Supp.2007).

¶ 3 The state retirement programs are administered by the Utah State Retirement Office, also known as the Utah State Retirement Systems, and the Utah State Retirement Board. *See id.* §§ 49–11–201 to –203. Over the course of many years, the Retirement Office sent Whitaker annual statements summarizing his defined retirement benefits, including documentation of his accrued service credit attributable to each retirement system and employer.[2] For example, his 2004 annual statement showed that he had accrued 3.5 years of service credit in the contributory local government system from his employment by the Davis and Weber County Canal Agency, 10.834 years of service credit in the noncontributory local government system from his employment by the City, and 15.654 years of service credit in the noncontributory state system from his employment by the State.

¶ 4 Though the statements show Whitaker's accrued service credit per system and employer, they do not show how those totals translate into actual benefits upon retirement. To determine that, a member must contact the Retirement Office, as instructed on the statements:

> To determine a monthly allowance estimate go to the Utah Retirement System web site at *www.urs.org* and click on the Retirement Benefit Estimate Calculator link. Follow the guides and use information from this and previous statements to determine an estimated allowance.

> If you are a member in more than one Retirement System, if you are a part-time elected or appointed official, or if you are employed with two or more employers at the same time, you will need to contact the Retirement Office.

¶ 5 In 2003, Whitaker began contacting the Retirement Office, requesting estimates of his retirement benefits. He claims that during one call he was told to just add the years of service credit shown on his annual statement to determine his total allowable credit. In November 2003, the Retirement Office sent him a retirement estimate informing him that he would accrue only 17.087 years of service credit toward retirement by May 16, 2006, if he continued to work full-time. Though he believed this estimate to be erroneous, Whitaker did nothing about it until August 2005, when he requested another estimate in preparation for his planned retirement.

¶ 6 The August estimate reflected the 17.087 years of service credit previously reported plus an additional three years of service credit that Whitaker had purchased for military service pursuant to Utah Code section 49–11–402. *See* Utah Code Ann. § 49–11–402 (2002). At a meeting held a couple of months later to clarify the information,[3] Re-

---

1. As defined in the applicable legislation, a "Regular full-time employee" is one "whose term of employment for a participating employer contemplates continued employment during a fiscal or calendar year and whose employment normally requires an average of 20 hours or more per week, except as modified by the board, and who receives benefits normally provided by the participating employer." Utah Code Ann. § 49–13–102(4)(a) (Supp.2007). *See id.* § 49–12–102(4)(a). Whitaker works forty hours per week for one employer and twenty hours per week for the other.

2. Whitaker is a member of the Public Employees' Noncontributory Retirement System by reason of his employment by the State and the City. *See* Utah Code Ann. §§ 49–13–101 to –701 (2002 & Supp.2007). He is a member of the Public Employees' Contributory Retirement System due to his prior employment by the Davis and Weber County Canal Agency. *See id.* §§ 49–12–101 to –701.

3. In October 2005, Whitaker and his attorney tried to clarify by telephone how much service credit Whitaker had accrued, but they received conflicting information, with some employees telling them that Whitaker had accrued around thirty-one years of service credit. To resolve the confusion, they scheduled a meeting.

tirement Office employees confirmed that Whitaker would accrue, including the military credit he purchased, 20.087 years of service credit toward retirement by May 16, 2006, assuming continued full-time employment. Relying on Utah Code section 49–11–401(3)(c), *see id.* § 49–11–401(3)(c) (Supp. 2007), the employees also explained that Whitaker could not accrue more than one year of service credit in any given year.

¶ 7 In December 2005, Whitaker petitioned to retire with 31.616 years of service credit, an amount that reflects the sum total of his accrued service credit with each of his three state and local employers plus the military credit he purchased. The Retirement Office denied his request, and he appealed to the Retirement Board. After an evidentiary hearing, the Retirement Board upheld the denial. Whitaker then sought judicial review in this Court.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Whitaker raises four primary issues. First, he argues that the Retirement Board misinterpreted Utah Code section 49–11–401(3), that the statute's language is ambiguous, and that it should be construed liberally to provide him maximum benefits consistent with the purpose of the statutory retirement scheme. *See id.* § 49–11–103 (2002). Simply put, he contends that the Retirement Board erred in denying him retirement with 31.616 years of service credit because it misconstrued the statute to mean that he cannot accrue more than one year of service credit in any given year.

¶ 9 Second, Whitaker argues that the Retirement Board's decision constitutes a virtual forfeiture of his service credit for purposes

of Utah Code section 49–11–403 and that he should be allowed to purchase these forfeited credits.[4] *See id.* § 49–11–403(1)(d), (3) (Supp.2007). Whitaker asserts that the Retirement Board erred in determining otherwise.

■ ¶ 10 Both of these issues require us to review the Retirement Board's interpretation of the relevant statutes. "[W]e review the Board's application or interpretation of a statute as a question of law under the correction-of-error standard."[5] *Sindt v. Retirement Bd.,* 2007 UT 16, ¶ 5, 157 P.3d 797. We will grant relief only if we determine, based on the record, that Whitaker was substantially prejudiced by the Retirement Board's erroneous interpretation or application of the law. *See* Utah Code Ann. § 63–46b–16(4)(d) (2004).

■ ¶ 11 Third, Whitaker asserts that the Retirement Board is equitably estopped from denying him retirement with 31.616 years of service credit. This "claim presents a mixed question, which 'involves the application of law to fact.'" *Terry v. Retirement Bd.,* 2007 UT App 87, ¶ 8, 157 P.3d 362 (quoting *State v. Hamilton,* 2003 UT 22, ¶ 33 n. 12, 70 P.3d 111). We review the underlying facts for clear error and the application of the law to those facts for correctness. *See id.*

■ ¶ 12 Fourth, Whitaker argues that he was denied due process because the Retirement Board failed to adequately preserve a record of the proceedings below. This argument presents a question of law that we review for correctness. *See id.* ¶ 9.

4. Alternatively, Whitaker argues that the Retirement Board's interpretation of section 49–11–401(3)(c) renders him ineligible for years of service credit and that his employer effectively purchased the ineligible credit by making retirement contributions on his behalf. *See* Utah Code Ann. § 49–13–302 (2002); *id.* § 49–11–403(3), (4) (Supp.2007). This argument is without merit and we decline to address it further. *See State v. Carter,* 776 P.2d 886, 888 (Utah 1989).

5. The Retirement Board asserts that it is entitled to deference because the Legislature granted the Board discretion to determine eligibility for and computation of service credit. *See* Utah Code

Ann. § 49–11–401(3)(c), (e) (Supp.2007). But entitlement to such deference is only triggered "when the board or office provides written documentation which demonstrates that the interpretation or definition promotes uniformity in the administration of the systems or maintains the actuarial soundness of the systems, plans, or programs." *Id.* § 49–11–203(1)(k) (2002). Absent any such documentation—and none has been called to our attention—the Retirement Board's decision is not entitled to deference. *See Sindt v. Retirement Bd.,* 2007 UT 16, ¶ 5, 157 P.3d 797.

## ANALYSIS

### I. Statutory Interpretation

¶ 13 Whitaker raises two issues of statutory interpretation. First, he asserts that the Retirement Board erred when it narrowly interpreted Utah Code section 49–11–401(3)(c) and (e) in a manner inconsistent with the Legislature's intent and the purpose of the statutory scheme, which is to provide maximum protection and benefit to public employees. Specifically, he believes the Board misread the statute to mean that he cannot accrue more than one year of service credit in any given year, even though he is working two full-time jobs.

¶ 14 Second, Whitaker argues that based on the Retirement Board's determination that he is only eligible for one year of service credit per year, his remaining "earned and paid service credit should qualify as 'forfeited' service credit." Accordingly, he asserts, the Board erred in not at least permitting him to purchase such forfeited credit and apply it toward his retirement under section 49–11–403(1)(d). We address each argument in turn.

### A. Service Credit

■ ¶ 15 "Under our rules of statutory construction, we look first to the statute's plain language to determine its meaning." *Sindt v. Retirement Bd.*, 2007 UT 16, ¶ 8, 157 P.3d 797 (citation and internal quotation marks omitted). Indeed, the plain language of a statute is the "best evidence of the true intent and purpose of the Legislature in enacting [it]." *Jensen v. Intermountain Health Care, Inc.*, 679 P.2d 903, 906 (Utah 1984). Because we presume that the Legislature uses statutory terms advisedly, we give effect to each "word, phrase, clause, and sentence where reasonably possible." *Sindt*, 2007 UT 16, ¶ 8, 157 P.3d 797 (citations and internal quotation marks omitted). "The meaning of a part of an act should harmonize with the purpose of the whole act. Separate

parts ... should not be construed in isolation from the rest of the act." *Jensen*, 679 P.2d at 906.

¶ 16 Whitaker contends that the Retirement Board interpreted section 49–11–401 too narrowly when it determined, based on subsections (3)(c) and (e), that he could not accrue more than one year of service credit in any given year, even though he is working two full-time jobs.[6] Subsection (3) provides:

In the accrual of service credit, the following provisions apply:

(a) A person employed and compensated by a participating employer ... in a system ... shall receive service credit for the term of the employment provided that all required contributions are paid to the office.

(b) An allowance or other benefit may not accrue under this title which is based upon the same period of employment as has been the basis for any retirement benefits under some other public retirement system.

(c) The board shall fix the minimum time per day, per month, and per year upon the basis of which one year of service and proportionate parts of a year shall be credited toward qualification for retirement. Service may be computed on a fiscal or calendar year basis and portions of years served shall be accumulated and counted as service. *In any event, all of the service rendered in any one fiscal or calendar year may not count for more than one year.*

(d) Service credit shall be accrued on a fiscal or calendar year basis as determined by the participating employer.

(e) *A member may not accrue more than one year of service credit per fiscal or calendar year as determined by the office.*

(f) Fractions of years of service credit shall be accumulated and counted in proportion to the work performed.

---

**6.** Whitaker also contends that section 49–11–401(3) only applies when an employee seeks to transfer service credit between systems. While subsections (1) and (2) of section 49–11–401 speak to the transfer of service credit, *see* Utah Code Ann. § 49–11–401(1)–(2) (Supp.2007), sub-

section (3) deals with the accrual of service credit generally, *see id.* § 49–11–401(3). Section 49–11–405 also addresses what happens when an employee has service credit in two systems. *See id.* § 49–11–405 (2002).

Utah Code Ann. § 49–11–401(3) (Supp.2007) (emphasis added). The phraseology of subsections (c) and (e) immediately suggests that the point made therein was important enough to the Legislature that it did not mind some redundancy in making it. Nonetheless, Whitaker argues that subsections (c) and (e) are ambiguous. He suggests that the phrase "all of the service rendered" as used in subsection (c) can mean all of the service rendered for "each employer" or for "all employers," and that the limitation of subsection (e) can likewise apply to service credit accrued either for "each employer" or for "all employers." He invites us to adopt the former reading in both cases, arguing that it is more consistent with the purpose of Title 49 "to provide maximum benefits and protections consistent with sound fiduciary and actuarial princip[le]s." *Id.* § 49–11–103(2).

¶ 17 The Retirement Board argues, on the other hand, that the plain language of subsections (c) and (e) is clear and unambiguous. In its view, "all" means "all" and "one" means "one." This proposition is straightforward and seems irrefutable.

¶ 18 If we were to adopt Whitaker's view, we would effectively write into the statute words that are not there. If the Legislature intended "all of the service rendered" to mean "all of the service rendered for each employer," it presumably would have said so. It did not. In fact, the language of the statutory scheme as a whole suggests the opposite view. In section 49–11–405, for example, the Legislature provided that "[a] member who has service credit from two or more systems ... may combine service credit for purposes of determining eligibility for retirement[,]" *id.* § 49–11–405(1)(a) (2002), but that provision "do[es] not apply to concurrent service," *id.* § 49–11–405(1)(b). Even subsection (b) of section 49–11–401(3) disallows the accrual of benefits based on service during the same period of employment as benefits already realized from another retirement system. *See id.* § 49–11–401(3)(b). Given that the Legislature decided that service credit in different systems cannot be combined in the case of concurrent employment, we cannot imagine that it intended to allow an employee to combine service credit from concurrent employers in the

same system. We simply take the Legislature at its word. When it pronounced that "[i]n any event, *all* of the service rendered in any one fiscal or calendar year ... may not count for more than one year," *id.* § 49–11–401(3)(c) (emphasis added), it plainly intended "all of the service rendered"—regardless of how it was rendered or for whom—to count for a maximum of one year of service credit for any given year.

## B. Forfeiture

■ ¶ 19 Under section 49–11–403, "[a] member, a participating employer, or a member and a participating employer jointly may purchase service credit equal to the period of the member's employment" where the member "forfeited service credit in this state if the member does not qualify for an allowance based on the service credit." *Id.* § 49–11–403(1)(d) (Supp.2007). Whitaker asserts that if we interpret section 49–11–401(3)(c) and (e) as the Retirement Board did, we have worked a forfeiture of the service credit from his second job given that he is unable to use it. He therefore contends that the Board erred in not permitting him, at a minimum, to purchase that service credit and apply it toward his qualification for retirement. We disagree.

¶ 20 Whitaker cannot forfeit that to which he was never entitled. The plain language of section 49–11–401(3)(c) and (e), as we have said, does not allow *him* to accrue more than one year of service credit in any given year. As of May 16, 2006, Whitaker had earned 17.087 years of service credit—the maximum amount possible given his employment with one or more participating employers from April 15, 1989. He purchased an additional three years of military service credit, bringing his total to 20.087 years of service credit applicable toward qualification for retirement. He has no right to more than that, and so he has nothing beyond that to forfeit. The Retirement Board did not err in so deciding.

## II. Estoppel

■ ¶ 21 Whitaker next argues that our interpretation of the relevant statutes not-

withstanding, he is entitled to retire with 31.616 years of service credit because the Retirement Office misled him into believing he could retire with that much credit. He claims the Retirement Office misled him by providing him with annual statements indicating he had accrued two years of service credit during each of several years, telling him over the phone that he could determine his allowable service credit simply by totaling the credits shown for each employer on those statements, and telling him and his attorney over the phone that he had accrued some thirty-one years of service credit. Even assuming he can prove that unusual circumstances exist allowing him to assert a claim of equitable estoppel against the Retirement Board,[7] his estoppel claim fails because he has not established the necessary elements.

¶ 22 To prove equitable estoppel, Whitaker must establish:

(1) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (2) reasonable action or inaction by the other party taken on the basis of the first party's statement, admission, act, or failure to act; and (3) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.

*Eldredge v. Utah State Ret. Bd.*, 795 P.2d 671, 675 (Utah Ct.App.1990). Whitaker asserts that the Retirement Office misled him both via its annual statements and its remarks over the phone, that he relied on the information, that his reliance was reasonable, and that he sustained injury as a result.

¶ 23 We agree with Whitaker that the annual statements issued by the Retirement Office may have been somewhat misleading.[8] And the Retirement Office employees' remarks to him and his attorney over the phone most certainly were misleading, especially in light of the "strict duty of certitude [imposed] upon those charged with the supervision and implementation of the [retirement] system." *Id.* at 676. But this strict duty is imposed due to "[t]he critical nature of the irrevocable, once-in-a-lifetime retirement decision of a public employee[.]" *Id.* Whitaker has not yet taken that "irrevocable, once-in-a-lifetime" step. Consequently, he has failed to establish either reliance on the Retirement Office's statements or any injury resulting from that reliance.

¶ 24 In our opinion in *Eldredge v. Utah State Retirement Board*, 795 P.2d 671 (Utah Ct.App.1990), upon which Whitaker heavily relies, we utilized the doctrine of equitable estoppel to enforce the payment of retirement benefits to a retiree who was told by the Retirement Office that he had 6.123 years of service credit not previously counted, and who, relying on that information, retired from his position with more than twenty-five years of service credit. *See id.* at 672–73, 678. In deciding the matter, we observed:

Eldredge relied on the representations of the Board and resigned a $37,000 a year position, *which he cannot regain.* ... Here, the Board had authority to set up Eldredge's retirement and grant him prior service credit, and it did so. Eldredge relied thereon to his substantial detriment

---

7. "As a general rule under case law, the doctrine of estoppel is not assertable against the state and its agencies." *Eldredge v. Utah State Ret. Bd.*, 795 P.2d 671, 675 (Utah Ct.App.1990). "Utah courts have, however, carved out an exception to this general common law rule in unusual circumstances 'where it is plain that the interests of justice so require.'" *Id.* (quoting *Utah State Univ. v. Sutro & Co.*, 646 P.2d 715, 720 (Utah 1982)). Because Whitaker has not established the basic elements necessary for estoppel, we do not decide whether the facts of his case satisfy the "unusual circumstances" exception. We do, however, clarify that the "unusual circumstances" referred to in *Eldredge* means something more than just a unique or unusual set of

facts, which clearly is presented here given the minuscule number of employees concurrently working two full-time government jobs.

8. Indeed, it would be a simple matter for the Retirement Office to specify on the statement itself how much "allowable" service credit a member had accrued. Likewise, it would be easy to indicate on the statements, clearly and unequivocally, that the statutes do not allow an employee to accrue more than one year of service credit in any given year, regardless of how many jobs the member works or how many systems in which the member earns credit.

and *cannot now revoke his action and recover his prior status.*

*Id.* at 676 (emphasis added).

¶ 25 Conversely, in *O'Keefe v. Utah State Retirement Board,* 929 P.2d 1112 (Utah Ct. App.1996), *aff'd,* 956 P.2d 279 (Utah 1998), another estoppel case, a retiree sought to have the Retirement Office accept "GAP time" contributions toward his retirement plan, which had previously been made by his employer. *See id.* at 1113–14. In rejecting the retiree's estoppel claim, we noted that "even if he did reasonably believe that the GAP time contributions were being accepted nonconditionally, he also knew *prior to his retirement* that the Board had decided to reject GAP contributions." *Id.* at 1117 (emphasis added).

¶ 26 Taken together, *Eldredge* and *O'Keefe* establish what is minimally necessary to prevail on an estoppel claim against the Retirement Board: A person must, in reliance on the Board's statement, admission, act, or failure to act, adopt some course or take some action that is to his or her substantial detriment, and he or she must suffer actual harm because of it. Generally speaking, that course or action, in the context of retirement, will be to retire from active employment.

¶ 27 Here, Whitaker has not taken any such action in reliance on the Retirement Office's statements. He has not resigned any of his positions or retired from active employment. He has not given up anything "which he cannot regain." *Eldredge,* 795 P.2d at 676. All of the misleading information the Retirement Office previously gave him has been clarified. And his status is the same now as it always has been.[9]

¶ 28 Whitaker contends that he would have taken different employment back in 1994 had he known that he could not accrue more than one year of service credit in a given year. Had he done so, he says, he could have earned an additional $3000 per year working as an appraiser. This unsubstantiated allegation, however, is insufficient to establish estoppel. Whitaker failed to demonstrate any reliance on any statement made in 1994 that caused him some actual injury. That he could have earned more money doing something other than working for the City for the past thirteen years is speculative at best. Because Whitaker has failed to show any actual reliance upon or injury resulting from the Retirement Office's statement, admission, act, or failure to act, we will not disturb the Retirement Board's decision denying Whitaker relief on estoppel grounds.[10]

## III. Due Process

¶ 29 Whitaker argues that he was denied due process because the Retirement Board failed to adequately preserve a record of its proceedings. First, he complains that the record of the evidentiary hearing held before the Retirement Board prematurely ended before Whitaker's attorney's cross-examination of a key witness. Second, he claims the record is inadequate because there are fifty-three instances in the record where the testimony was deemed "inaudible" by the court reporter, who inserted that notation in the transcript in lieu of actual testimony.

¶ 30 After Whitaker filed his brief in this court, the parties agreed to supplement the record with the key witness's complete testimony, as obtained at a supplemental hearing before the Retirement Board. We granted the parties' joint motion to do so, and the record was appropriately supplemented. Be-

9. While the parties stipulated during the course of this judicial review proceeding that Whitaker "shall be permitted to retire from the Utah State Retirement Systems without prejudice to his pending appeal," it is clear from the record and oral argument that Whitaker has not actually retired.

10. It is important to recognize that Whitaker's concurrent efforts on behalf of two governmental employers has not been for naught, even in the retirement context. Indeed, although he cannot claim the 31.616 years of service credit that he desires, his substantially increased income from working two jobs over the last several years will have a decidedly positive effect on his ultimate retirement benefits. *See* Utah Code Ann. §§ 49–12–402(2)(a), –13–402(2)(a) (Supp.2007) (establishing employee's final average monthly salary as a component of the defined benefit formula under each applicable system). And counsel for the Retirement Board and Retirement Office acknowledged as much at oral argument.

cause Whitaker's due process argument with respect to this testimony is now moot, we need not address it.

■ ¶ 31 Turning to the second claim, the many instances of inaudible testimony across a range of witnesses are troubling in a day and age when the fidelity and reliability of state-of-the-art recording equipment are indisputably of better quality than was achieved here. A recurrence of this problem may not be viewed with much patience in a future case. And legally speaking, "[w]hile minor omissions [from a transcript] may be inconsequential," they may also be so numerous as to leave us "without any confidence that the record is in fact a true record of the proceedings." *Tolman v. Salt Lake County Attorney,* 818 P.2d 23, 27 n. 5 (Utah Ct.App. 1991). We are not convinced that the omissions are consequential in this case. And in any event, Whitaker identifies no instances where inaudible testimony caused him prejudice. We therefore decline to further address the claim. *See* Utah R.App. P. 24(a)(9); *State v. Lee,* 2006 UT 5, ¶ 22, 128 P.3d 1179.

CONCLUSION

¶ 32 The Retirement Board was correct in its interpretation of Utah Code section 49–11–401(3)(c) and (e), which establish by clear language that an individual concurrently employed full-time by two governmental entities may not accrue toward retirement more than one year of service credit in any given year. The Board also correctly determined that Whitaker has not forfeited any credit and thus is not entitled to purchase any credit under section 49–11–403. Whitaker's claim of equitable estoppel fails because he did not rely, to his detriment, on any statement, admission, act, or failure to act. Finally, his due process arguments are unavailing. Accordingly, we decline to disturb the Retirement Board's decision.

¶ 33 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and CAROLYN B. McHUGH, Judge.

2008 UT App 286

STATE of Utah, Plaintiff and Appellee,

v.

Jose Baltarcar ROYBAL, Defendant and Appellant.

No. 20060911–CA.

Court of Appeals of Utah.

July 25, 2008.

Randall W. Richards, Ogden, for Appellant.

Mark L. Shurtleff, atty. gen., and Ryan D. Tenney, asst. atty. gen., Salt Lake City, for Appellee.

Before THORNE, Associate P.J., DAVIS and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 Defendant Jose Baltarcar Roybal appeals the trial court's denial of his motion to suppress evidence. We conclude that the appeal is well-taken, reverse the denial of the motion to suppress, and remand for a new trial.

## BACKGROUND [1]

¶ 2 Roybal's live-in girlfriend called 911 and reported a domestic dispute. She identi-

---

1. The trial court made some oral factual findings and conclusions of law after the April 18, 2006, evidentiary hearing, but it never entered formal factual findings and conclusions of law. Our recitation of the facts, therefore, is based on the trial court's oral findings and on evidence presented at the evidentiary hearing that supports those findings.

We have jurisdiction to consider the suppression issue because the trial court's sentence of Roybal "constitutes a final order from which he may appeal." *State v. Norris*, 2002 UT App 305, ¶ 8, 57 P.3d 238 (determining that the Utah Court of Appeals had jurisdiction to consider an appeal from the trial court's denial of the defendant's motion to withdraw a guilty plea, even

¶3 The dispatch center informed Sergeant Ledford of the call, stating that the suspect was "very intoxicated," and Sergeant Ledford started heading toward the house. En route, he saw the described van.[2] He testified that the driver was driving in a manner that indicated he might be intoxicated—he was driving with "slow deliberate movements" and seemed to be trying to avoid Sergeant Ledford. Sergeant Ledford further testified that he followed Roybal long enough to ascertain he was driving in a circular pattern, near the 911 caller's residence. The trial court found that it "was not a circle pattern, but a right-turn pattern." Nonetheless, this driving pattern concerned Sergeant Ledford because, in his experience, people leaving the scene after domestic disputes often drive around the area, waiting to see if the police are going to arrive, before returning to the scene.

¶4 After following Roybal for a few blocks, Sergeant Ledford noticed that Roybal was driving below the speed limit, but Sergeant Ledford did not observe any traffic violations.[3] Sergeant Ledford pulled Roybal over. Sergeant Ledford later testified that he "smell[ed] the odor of alcohol coming from

inside the van." Once Roybal exited the van, Sergeant Ledford smelled alcohol on Roybal's breath. Roybal admitted that he had been drinking, and he failed a field sobriety test. Sergeant Ledford arrested him for driving under the influence of alcohol. This prosecution followed.

---

though the trial court only orally denied the motion, because the "sentence constitute[d] a final order") (citation and internal quotation marks omitted).