2019 UT App 89

# THE UTAH COURT OF APPEALS

MARJEAN SEARCY NIELSEN AND UNIVERSITY OF UTAH,
Petitioners,
*v.*
RETIREMENT BOARD,
Respondent.

Opinion
No. 20180010-CA
Filed May 23, 2019

Original Proceeding in this Court

Heather S. White, Robert T. Denny, and Rachel E.
Phillips, Attorneys for Petitioner Marjean
Searcy Nielsen

Sean D. Reyes and Brent A. Burnett, Attorneys for
Petitioner University of Utah

David B. Hansen and Erin G. Christensen, Attorneys
for Respondent

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES RYAN M. HARRIS and DIANA HAGEN concurred.

APPLEBY, Judge:

¶1　Marjean Searcy Nielsen and the University of Utah (University) seek judicial review of the Utah State Retirement Board's (Board) final order, arguing that the Board erred in determining that Nielsen was not entitled to continue participating in Utah Retirement Systems' Public Employee Noncontributory Retirement System (URS Plan). We conclude the Board's determination was based on an erroneous interpretation and application of the law, and Nielsen has been substantially prejudiced by its error. We therefore set aside the Board's order and instruct it to hold further proceedings consistent with this opinion.

BACKGROUND

¶2    In 2013, Nielsen had accrued 20.65 years of service credit in the URS Plan working with various participating employers. That year, she began working for the University in a position statutorily classified to participate in a non-URS retirement system (Alternate Plan). Because she had service credit in the URS Plan before the date of her University employment, she was entitled to a "one-time irrevocable election to continue participation" in the URS Plan. Utah Code Ann. § 49-13-204(2)(c) (LexisNexis Supp. 2018).

¶3    Nielsen claims she accepted her position at the University in part because she knew she could continue participating in the URS Plan. Before beginning her new employment, Nielsen claims she telephoned the Utah State Retirement Office (URS) and asked if she needed to take any steps to maintain active participation in the URS Plan. According to Nielsen, a URS representative told her she was "good to go" and did not need to take any affirmative steps. Nielsen does not remember the name of the URS representative, and URS has no record of any such conversation. In any event, upon commencing her employment with the University, Nielsen did not affirmatively choose to participate in the Alternate Plan and—perhaps in reliance on her phone call with URS—she did not take any steps to continue participating in the URS Plan. Accordingly, the University enrolled her by default in the Alternate Plan.

¶4    Nielsen participated in the Alternate Plan for about two years, but claims not to have noticed she was not enrolled in the URS Plan until January 2015. Because Nielsen would lose a significant amount of retirement benefits by not participating in the URS Plan, she and the University discussed how she might re-enroll. An email dated January 28, 2015, from a University staff member said, "I have told [Nielsen] that she needs to resign from her position at the [University] then we will re-hire her in

the same position after 32 days. At that time, she can enroll in the [URS Plan]."

¶5    In February 2015, Nielsen resigned from her University position. Thirty-six days later, the University rehired Nielsen to the same position from which she resigned. When she was rehired, Nielsen "signed an Irrevocable Retirement Plan Election to request participation [in the URS Plan]." The University certified to URS that, beginning the day Nielsen was rehired, she was eligible to participate in the URS Plan. About seven months after Nielsen was rehired, URS notified her she was not entitled to participate in the URS Plan. It explained that, because she made an "irrevocable election . . . to participate in [the Alternate Plan]" in 2013, she was not eligible to participate in the URS Plan while employed at the University.

¶6    Nielsen appealed URS's decision to the Board's executive director. The executive director upheld URS's decision, explaining that when Nielsen "began employment with the University of Utah, . . . [she] had a one time opportunity under statute to elect to continue with [the URS Plan] but did not do so." His letter to Nielsen added, "Unfortunately, I do not have the discretion to contradict the statute and allow you another election to rejoin [the URS Plan]."

¶7    Nielsen filed a "Request for Board Action," and the University was joined as a third-party respondent. Nielsen, the University, and URS each filed a motion for summary judgment. Nielsen and the University argued that, under the plain language of Utah Code section 49-13-204(2)(c), she was entitled to continue participation in the URS Plan. Nielsen presented evidence showing she would "lose over $550,000 in retirement benefits if she [was] not permitted to continue with [the URS Plan]."

¶8    After considering the undisputed evidence and the parties' arguments, the Board granted summary judgment in favor of URS. The order began by noting that, under Utah Code

section 49-13-204(2)(c), Nielsen "had a statutory one-time irrevocable election to continue her participation [in the URS Plan] when she began employment with the University in 2013." The Board then interpreted the statute and applied it to Nielsen's case. First, it noted that, "[u]nder the plain language of the statute, the election must be made when beginning employment." The Board explained that "'[i]rrevocable,' on its own, would necessarily require that the election be made only once—once you've made it, it cannot be undone or changed." It then interpreted the word "one-time" to mean "there is one limited period, once an employee begins employment, to make the election." Based on this statutory interpretation, the Board concluded that, because Nielsen "failed to exercise her election when she began employment [in 2013], and instead was enrolled in the [Alternate Plan], she was unable to make the election at a later date."

¶9     Nielsen and the University seek judicial review.


ISSUE AND STANDARD OF REVIEW

¶10     The issue before this court is whether the Board erred in determining that Nielsen was not entitled to make an election to continue participating in the URS Plan.[1] This issue requires us to review the Board's interpretation and application of Utah Code section 49-13-204(2)(c). "We review the Board's application or interpretation of a statute as a question of law under the correction-of-error standard." *Whitaker v. Utah State Ret. Board*, 2008 UT App 282, ¶ 10, 191 P.3d 814 (quotation simplified). We

---

1. Nielsen remains a member of the URS Plan with vested benefits based on her 20.65 years of service credit. *See* Utah Code Ann. § 49-13-401(1) (LexisNexis Supp. 2018). The issue is whether she may elect to "continue" participating while employed at the University—that is, accrue additional service credit.

will grant relief only if we determine that Nielsen has been substantially prejudiced by the Board's erroneous interpretation or application of the law. *See* Utah Code Ann. § 63G-4-403(4)(d) (LexisNexis 2016).

ANALYSIS

I. Statutory Interpretation

¶11 Nielsen argues that she is "entitled to continue her participation in [the URS Plan] based on the plain language of Utah Code section 49-13-204(2)(c)."[2] We agree.

¶12 In interpreting a statute, our "primary goal is to give effect to the legislature's intent in light of the purpose that the statute was meant to achieve. The best evidence of the legislature's intent is the plain language of the statute itself." *State v. Ogden*, 2018 UT 8, ¶ 31, 416 P.3d 1132 (quotation simplified). Accordingly, "under our rules of statutory construction, we look first to the statute's plain language to determine its meaning." *Whitaker v. Utah State Ret. Board*, 2008 UT App 282, ¶ 15, 191 P.3d 814 (quotation simplified). "If the plain meaning of the statute can be discerned from its language, then we need not employ any other interpretive tools." *State v. Hunt*, 2018 UT App 222, ¶ 17, 438 P.3d 1 (quotation simplified).

¶13 The statute at issue here provides, "[A] regular full-time employee who begins employment with an institution of higher education on or after May 11, 2010, has a one-time irrevocable election to continue participation in [the URS Plan], if the employee has service credit in [the URS Plan] before the date of

―――――――――――――

2. Nielsen's arguments are consistent with the University's position. The University argues that the Board "erred in its interpretation of [Utah Code section 49-13-204(2)(c)]," and requests that we set aside "the Board's final agency action."

employment." Utah Code Ann. § 49-13-204(2)(c) (LexisNexis Supp. 2018). It is undisputed that, at least at some point, Nielsen was entitled to make a one-time irrevocable election to continue in the URS Plan. That is, Nielsen is a regular full-time employee at an institution of higher education who began employment after May 11, 2010, and she had service credit in the URS Plan before the date of her employment. It is also undisputed that Nielsen made her first and only affirmative election to continue participating in the URS Plan in 2015.[3]

¶14 The Board concluded, however, that section 49-13-204(2)(c) required Nielsen to make her election within some "limited period" after she first began employment at the University in 2013. As we explain below, the Board's interpretation of section 49-13-204(2)(c) is contrary to the plain meaning of the statute's unambiguous language. Because the statute does not limit the time frame within which

---

3. The Board argues that, because "Nielsen did not make the necessary election to participate in the [URS Plan]," her default enrollment in the Alternate Plan "had the effect of irrevocably limiting her retirement participation to the Alternate Plan." That is, it asserts Nielsen's failure to take affirmative action regarding her participation in a particular retirement plan "result[ed] in irrevocable application of [a] default election." We reject this argument because it is contrary to the statute's plain language. The right to an "election" includes the right to make an affirmative choice. *See* Merriam-Webster's Collegiate Dictionary 400 (9th ed. 1986) (defining "election" as "the right, power, or privilege of making a choice"). In proceedings before the Board, the parties stipulated that Nielsen "did not make an election to continue her retirement participation with URS upon beginning employment with the University in February 2013." And we are not convinced that a "non-election" (the default enrollment), without some affirmative choice of the employee, can qualify as an "election" as the term is used in Utah Code section 49-13-204(2)(c).

employees must make their one-time irrevocable elections, and because Nielsen made her first and only election in 2015, we conclude she is entitled to continue participating in the URS Plan.

¶15   First, the Board erred when it determined that the clause "who begins employment . . . on or after May 11, 2010," means "the election must be made *when* beginning employment." (Emphasis added.) The Board now clarifies its interpretation, arguing that "a regular full-time employee who *begins employment*" means "the election is available only . . . for a short period of time following and anchored to the hire date."

¶16   We reject this interpretation because it is contrary to proper grammar and usage. *See State ex rel. Div. of Forestry, Fire & State Lands v. Tooele County*, 2002 UT 8, ¶ 13, 44 P.3d 680 (applying "elementary rules of punctuation and grammar . . . as an aid to ascertain the legislature's purpose" (quotation simplified)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 140 (1st ed. 2012) ("Words are to be given the meaning that proper grammar and usage would assign them."). In section 49-13-204(2)(c), "who begins employment with an institution of higher education on or before May 11, 2010," is a relative clause that modifies the term "regular full-time employee." Thus, not *all* regular full-time employees have the right to a one-time irrevocable election; only such employees who begin employment on or after May 11, 2010, have that right. Contrary to the Board's interpretation, the clause "who begins employment . . . on or after May 11, 2010," does not establish a period in which the relevant employees must make their elections.

¶17   Second, the Board erred in determining that the term "one-time irrevocable election" means "there is one limited period . . . to make the election." "Absent a contrary indication, we assume that the legislature used each term advisedly according to its ordinary and usually accepted meaning." *Muddy Boys, Inc. v. Department of Commerce*, 2019 UT App 33, ¶ 12

(quotation simplified). Because the term "one-time irrevocable election" is not defined in the relevant statute, "we must endeavor to determine its plain and ordinary meaning."[4] *Id.* ¶ 16. In determining "the ordinary meaning of nontechnical terms of a statute, our starting point is the dictionary. If not plain when read in isolation, a word may become so in light of its linguistic, structural, and statutory context." *Nichols v. Jacobsen Constr. Co.*, 2016 UT 19, ¶ 17, 374 P.3d 3 (quotation simplified).

---

4. Many of the Board's arguments rely on "federal law and guidance." That is, the Board argues that its interpretation of Utah Code section 49-13-204(2)(c) "keeps URS and its employers and members within the established bounds to maintain its tax qualified status" under federal law. We acknowledge that the Board has a duty to "ensure that the [retirement] systems, plans, programs, and funds are administered according to law" and "on an actuarially sound basis," Utah Code Ann. § 49-11-203(1)(c), (g) (LexisNexis 2015), and that the Board "may take actions necessary to protect the tax-qualified status of the systems, plans, and programs under its control," *id.* § 49-11-801(5). But this statutory authority does not permit the Board to ignore a statute's plain language. *See Allred v. Utah State Ret. Board*, 914 P.2d 1172, 1175 (Utah Ct. App. 1996) ("If the Board believes that the current language of the Act produces an actuarially unsound retirement system, the Board should seek relief from the Legislature through an amendment to the Act."). Further, the "federal law and guidance" cited by the Board does not support the Board's claim that the legislature used the term "one-time irrevocable election" as "a defined term of art with respect to retirement plan participation elections." We tend to agree with Nielsen that the phrase is not well-defined, and we are not convinced that it has "a settled meaning in the law." *See Truck Ins. Exch. v. Rutherford*, 2017 UT 25, ¶ 7, 395 P.3d 143 (explaining that "when a statute adopts a legal term of art with a settled meaning in the law, we interpret the statute to embrace the meaning of the term as it is understood in that context" (quotation simplified)).

But "unambiguous language may not be interpreted to contradict its plain meaning." *Lorenzo v. Workforce Appeals Board*, 2002 UT App 371, ¶ 11, 58 P.3d 873 (quotation simplified).

¶18　The dictionary defines "irrevocable" as "not possible to revoke: unalterable." Merriam-Webster's Collegiate Dictionary 640 (9th ed. 1986). "Unalterable" means "not capable of being altered or changed." *Id.* at 1282. The word "one-time" means "occurring only once: one shot." *Id.* at 824. And "one-shot" means "complete or effective through being done or used or applied only once" or "not followed by something else of the same kind." *Id.*

¶19　Applying these definitions here, a one-time irrevocable election is an election that (1) may be made only once (one-time), and (2) may not be changed, altered, or revoked (irrevocable). But defining an election as "one-time irrevocable" does not, by itself, establish a restriction on when the election must be made. The Board argues that this interpretation renders meaningless the word "one-time." It asserts that "[o]nce the irrevocable election is made, there would not be another opportunity to make it by virtue of its irrevocability because it would remain in force, unable to be revoked or altered." According to the Board, because "'one-time' must add something to the meaning," it "signifies that . . . there is one limited period, once an employee begins employment, to make the election." We are not convinced.

¶20　To be sure, this court seeks to interpret statutes "to give meaning to all parts, and avoid rendering portions of the statute superfluous." *State v. Outzen*, 2017 UT 30, ¶ 9, 408 P.3d 334 (quotation simplified). But adopting the Board's interpretation would require us to ignore the plain meaning of unambiguous language and "effectively write into the statute words that are not there." *Whitaker v. Utah State Ret. Board*, 2008 UT App 282, ¶ 18, 191 P.3d 814; *see also State v. Rincon*, 2012 UT App 372, ¶ 14, 293 P.3d 1142 ("[O]ur jurisprudence prohibits us from reading substantive terms into a statute that are not already there."). In

contrast, Nielsen argues that the term "one-time irrevocable election" means one-time irrevocable election, no more and no less. We see no reason to conclude that the term is intended to mean something different. *See Scott v. Scott*, 2017 UT 66, ¶ 26, 423 P.3d 1275 (explaining that courts "should discern what the legislature intended from the plain language of the text unencumbered by notions of what we think the legislature must have wanted the language to accomplish").

¶21　If, as the Board argues, the legislature intended the election to be available only "at or for a short period of time following and anchored to the hire date," "surely the legislature would have said so in the text of [the statute]." *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 22, 248 P.3d 465. In fact, provisions immediately preceding and following section 49-13-204(2)(c) set time limitations on when other groups of employees must make similar elections. *See* Utah Code Ann. §§ 49-13-204(1)(a), (5)(a)–(b) (LexisNexis Supp. 2018). Under our rules of statutory interpretation, we must "give effect" to the legislature's omission of a time limitation "by presuming [it] to be purposeful." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863.

¶22　In sum, Utah Code section 49-13-204(2)(c) provides Nielsen the right to make a one-time irrevocable election to continue her participation in the URS Plan, and the statute does not include a limitation on when the election must be made. Because Nielsen made her first and only election in 2015, we conclude she is entitled to continue her participation in the URS Plan.

## II. Substantial Prejudice

¶23　As explained above, the Board erred in determining that Nielsen was not entitled to elect to continue participating in the URS Plan. We will grant relief, however, only if Nielsen has been substantially prejudiced by the Board's erroneous interpretation and application of the law. Utah Code Ann. § 63G-4-403(4)(d) (LexisNexis 2016). The record indicates that Nielsen will lose

more than $550,000 over the course of her retirement if she is not permitted to continue participating in the URS Plan. Such a loss certainly constitutes substantial prejudice. *See WWC Holding Co. v. Public Service Comm'n*, 2002 UT 23, ¶ 7, 44 P.3d 714 ("A party has been substantially prejudiced if the alleged error was not harmless." (quotation simplified)).

## CONCLUSION

¶24 The Board erred in determining that Nielsen was not entitled, under Utah Code section 49-13-204(2)(c), to elect to continue participating in the URS Plan. The Board's error substantially prejudiced Nielsen. We therefore set aside the Board's final order and instruct it to hold further proceedings consistent with this opinion.

_____