**2020 UT App 127**

# THE UTAH COURT OF APPEALS

NEIL ALAN JOHNSON AND JODI LYN JOHNSON,
Appellants,
*v.*
NATIONSTAR MORTGAGE LLC AND U.S. BANK NA,
Appellees.

Opinion
No. 20200012-CA
Filed September 11, 2020

Fourth District Court, Spanish Fork Department
The Honorable Jared Eldridge
No. 170300085

David L. Fisher, Attorney for Appellants

Robert H. Scott and Jason T. Baker,
Attorneys for Appellees

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

POHLMAN, Judge:

¶1     Neil Alan Johnson and Jodi Lyn Johnson (collectively, the Johnsons) appeal the district court's dismissal of their claims against Nationstar Mortgage LLC and U.S. Bank NA (collectively, Appellees) with respect to the Johnsons' mortgage on a home they purchased in Lehi, Utah (the Property). The Johnsons contend that the court erred by concluding that Appellees satisfied the statute of limitations applicable to their nonjudicial foreclosure of the Johnsons' property and that the Johnsons' claims under the Truth in Lending Act were barred by the doctrine of res judicata. We affirm.

BACKGROUND

¶2    In April 2007, the Johnsons financed ownership of the Property by a loan evidenced by a promissory note (the Note) and secured by a trust deed. The trust deed, duly recorded in the Utah County recorder's office, named Varent Inc. as the lender and Mortgage Electronic Registration Systems Inc. (MERS) as the nominal beneficiary. The trust deed was later assigned to Appellees.

¶3    The Note required the Johnsons to make payments on the first day of each month and provided that any amounts still owing under the Note as of the maturity date in May 2037 would be due at that time. Additionally, the Johnsons agreed to nonjudicial foreclosure in the event of default.

¶4    A notice of default was recorded in the Utah County recorder's office on October 30, 2009 (the Default Notice). The Default Notice accelerated the loan, making the entire obligation "immediately due and payable." A trustee's sale was scheduled for September 2010.

*The First Suit*

¶5    The Johnsons filed suit in September 2010 (the First Suit), naming as defendants, among others, Varent's former CEO, MERS, and the foreclosure trustee. In the First Suit, the Johnsons sought relief from the nonjudicial foreclosure that had been initiated against them, generally alleging that it appeared that "no entity exists today with the right to commence a non-judicial foreclosure on [the Property]" and that a controversy existed over "whether or not any of the Defendants are qualified and entitled to sell [the Property]." Among the factual bases allegedly entitling them to relief, the Johnsons claimed that "[o]n or about March 17, 2010, [they] executed and recorded their Notice of Right to Cancel" pursuant to the Truth in Lending Act (TILA), *see generally* 15 U.S.C. § 1635 (2018), and that "[c]opies of

[the Johnsons'] executed and recorded Notice of Right to Cancel was delivered to all known Defendants by same Process on or about March 26, 2010." In terms of relief, the Johnsons asked, among other things, that the court enjoin the defendants from exercising their remedies under the trust deed.

¶6 Several of the defendants—including the trustee and the beneficiary under the trust deed at the time—filed a motion to dismiss the First Suit with prejudice pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure. In their motion, the defendants addressed the TILA allegations and argued that the Johnsons had failed to state a claim for relief under TILA where "multiple courts have rejected the [Johnsons'] premise" that "mere declaration of rescission of a loan for purported TILA violations" automatically cancels "the security interest represented by the recorded deed of trust so as to terminate any right to proceed with nonjudicial foreclosure." (Citing *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54–55 (1st Cir. 2002).) In response, the Johnsons filed their own motion to dismiss (without prejudice), claiming that their complaint "should have been filed in the Federal Court" because the defendants had violated several federal laws, including TILA.

¶7 In January 2011, the district court granted the defendants' motion to dismiss with prejudice. In so doing, the court specifically addressed the Johnsons' TILA allegations. The court adopted the reasoning set forth in the cases cited by the defendants and rejected the premise that "mere declaration of rescission of a loan for purported TILA violations" automatically cancels "the security interest represented by the recorded deed of trust so as to terminate any right to proceed with nonjudicial foreclosure." For this reason (and others not relevant to this appeal), the court concluded that the Johnsons' complaint failed to state a claim.

¶8 The Johnsons did not appeal the dismissal of the First Suit. Instead, between September 2010 and June 2017, they filed

seven bankruptcies, all of which were dismissed. No trustee's sale occurred during that time period.

*The Second Suit*

¶9 The Property was again scheduled for a trustee's sale in June 2017, and the Johnsons filed another complaint (the Second Suit) before the sale was set to occur. In the Second Suit, the Johnsons alleged that the trustee's sale could not go forward because the relevant statute of limitations had expired. They asserted that the six-year limitations period applicable to written contracts under Utah Code section 78B-2-309 applied to actions enforcing the note secured by the trust deed. And, acknowledging that the limitations period runs six years after the acceleration of the defaulted loan, the Johnsons alleged that even with the tolling due to the bankruptcies, the limitations period expired in January 2017—well before the nonjudicial foreclosure sale set in June 2017.

¶10 Additionally, the Johnsons alleged that they were entitled to relief pursuant to TILA, because TILA afforded "a borrower . . . three years after the date of the consummation of the transaction to provide notice of rescission" and "[o]n March 17, 2010, [the Johnsons] served Creditors with and recorded a notice rescinding the note and trust deed on the [Property]." The Johnsons contended that their notice "effectively rescinded the Note and Mortgage, thereby relieving [them] of any obligation to pay the Note secured by the Deed of Trust and voiding both documents."

¶11 In response, Appellees moved for partial judgment on the pleadings.[1] Appellees argued that the Johnsons could not "maintain any claim based on" their statute of limitations or

---

1. The Second Suit also involved claims for relief regarding another property that is not the subject of this appeal.

TILA rescission theories. As to the statute of limitations theory, Appellees disagreed with the Johnsons about the applicable statute of limitations, contending that the six-year limitations period for negotiable instruments under Utah Code section 70A-3-118, not the limitations period for written contracts, applied. To that end, they acknowledged that the limitations period began running as of the date the debt was accelerated in October 2009. But Appellees asserted that under Utah Code section 57-1-34, which addresses how the limitations period is satisfied with respect to judicial and nonjudicial foreclosures, *see generally* Utah Code Ann. § 57-1-34 (LexisNexis Supp. 2019), the foreclosure sale was not time-barred because the appropriate action—recording the notice of default—took place within six years of the loan's acceleration.

¶12   With respect to the TILA theory, Appellees argued that the claim preclusion branch of res judicata barred relitigation of the Johnsons' TILA rescission claim. They asserted that all three elements of claim preclusion were met: they were in privity with the defendants in the First Suit, the TILA right-to-cancel claim was litigated and decided in that suit, and the First Suit's dismissal constituted a final judgment on the merits.

¶13   The district court agreed with Appellees. As to the statute of limitations argument, the court concluded that the limitations period for negotiable instruments under section 70A-3-118 was the "controlling statute of limitations to enforce the note" and that the Default Notice recorded in October 2009 "satisfied the statute of limitations to enforce the deed of trust" pursuant to section 57-1-34. In so deciding, the court determined that the plain language of section 57-1-34 dictated that the Default Notice "both accelerated the loan and satisfied the statute of limitations simultaneously." The court also concluded that the Johnsons' rescission claim under TILA was barred by claim preclusion, determining that each element of claim preclusion had been met and that "the court in the [First Suit] considered and rejected [the Johnsons'] alleged TILA rescission and held it did not bar

foreclosure." On this basis, the court granted Appellees' motion for partial judgment on the pleadings and dismissed the claims applicable to the Property.

¶14    The Johnsons timely appeal.[2]


ISSUES AND STANDARDS OF REVIEW

¶15    The Johnsons raise two issues on appeal. First, they argue that the district court erred by determining that recording the Default Notice in October 2009 pursuant to Utah Code section 57-1-34 satisfied the applicable statute of limitations. "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863 (cleaned up).

¶16    Second, the Johnsons argue, in the alternative, that the district court erred in concluding that their TILA rescission claim was barred under the claim preclusion branch of res judicata. "Whether a claim is barred by res judicata is a question of law that we review for correctness." *Gillmor v. Family Link, LLC*, 2012 UT 38, ¶ 9, 284 P.3d 622.

---

2. The Johnsons originally sought review of the district court's order in an appeal we dismissed without prejudice for lack of finality. The jurisdictional defect was remedied, and the Johnsons then filed the present appeal. In doing so, Appellees asked us to decide the present appeal on the briefs and arguments submitted in the previously dismissed appeal, which we agreed to do after receiving no response from the Johnsons. Accordingly, we resolve the present appeal based on the arguments and briefs previously filed.

ANALYSIS

I. Statute of Limitations

¶17    The Johnsons argue that the district court incorrectly concluded that recording the Default Notice satisfied the statute of limitations applicable to enforcing the Note secured by the trust deed. The Johnsons concede that Utah Code section 70A-3-118, which provides a six-year limitations period for actions enforcing a party's obligation to pay on a note, governs the timing for commencing the nonjudicial foreclosure against them. *See generally* Utah Code Ann. § 70A-3-118(1) (LexisNexis 2009). And they acknowledge that Utah Code section 57-1-34(2) requires a trustee seeking to pursue a nonjudicial foreclosure to record a default notice within the six-year period prescribed under section 70A-3-118. *See generally id*. § 57-1-34(2) (Supp. 2019). But they assert that a trustee's sale is a separate action from the recording of a notice of default within the overall nonjudicial foreclosure proceedings, independently subject to its own six-year limitations period under section 70A-3-118(1). On that basis, they claim that recording the Default Notice cannot satisfy the limitations period applicable to the actual trustee's sale and that, under section 70A-3-118(1), the trustee's sale itself must occur within six years of the loan's acceleration. We conclude that the plain language of sections 57-1-34 and 70A-3-118 does not support the Johnsons' preferred interpretation.

¶18    Our primary goal in resolving a question of statutory interpretation "is to evince the true intent and purpose of the Legislature," and "the best evidence of the legislature's intent is the plain language of the statute itself." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (cleaned up). "Absent a contrary indication, we assume that the legislature used each term advisedly according to its ordinary and usually accepted meaning." *Nielsen v. Retirement Board*, 2019 UT App 89, ¶ 17, 443 P.3d 1264 (cleaned up). We also "seek to give effect to

omissions in statutory language by presuming all omissions to be purposeful." *Marion Energy*, 2011 UT 50, ¶ 14. And "when the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed," and our task is typically at an end. *Hertzske v. Snyder*, 2017 UT 4, ¶ 10, 390 P.3d 307 (cleaned up); *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000.

¶19    At issue in this case is the nonjudicial foreclosure of the trust deed on the Property. Utah Code section 57-1-34 addresses the limitations of actions for both judicial and nonjudicial foreclosures of trust property. It provides,

> A person shall, within the period prescribed by law for the commencement of an action on an obligation secured by a trust deed: (1) commence an action to foreclose the trust deed; or (2) file for record a notice of default under Section 57-1-24.

Utah Code Ann. § 57-1-34.[3] This court has recently explained, as the parties concede, that the "period prescribed by law"

---

3. This wording reflects the statutory language as amended effective May 10, 2016. Before that date, section 57-1-34 provided,

> The trustee's sale of property under a trust deed shall be made, or an action to foreclose a trust deed as provided by law for the foreclosure of mortgages on real property shall be commenced, within the period prescribed by law for the commencement of an action on the obligation secured by the trust deed.

Utah Code Ann. § 57-1-34 (LexisNexis 2010). On appeal, the Johnsons do not challenge the district court's determination that the May 10, 2016 amended version, rather than the pre-amendment version, applies here. We accordingly accept that

(continued…)

applicable to nonjudicial foreclosures under a trust deed is that set forth in Utah Code section 70A-3-118(1), *see Deleeuw v. Nationstar Mortgage LLC*, 2018 UT App 59, ¶¶ 11–16, 424 P.3d 1075 (cleaned up), which provides that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date," Utah Code Ann. § 70A-3-118(1).

¶20     The meaning of sections 57-1-34 and 70A-3-118 in setting forth the operation of the statute of limitations applicable to nonjudicial foreclosures of trust deeds is clear. As decided by this court in *Deleeuw*,[4] the limitations period for nonjudicial foreclosures of trust deeds is six years, triggered either upon the due date provided in the note or the accelerated due date. *See* Utah Code Ann. § 70A-3-118(1); *id*. § 57-1-34(2); *Deleeuw*, 2018 UT App 59, ¶¶ 12–18. Once the limitations period is triggered,

---

(…continued)

the amended version is the relevant version for purposes of resolving this appeal.

4. The Johnsons place much emphasis on our decision in *Deleeuw v. Nationstar Mortgage LLC*, 2018 UT App 59, 424 P.3d 1075, contending that in that case we decided that the trustee's sale must occur within six years after note acceleration. We did not. In *Deleeuw*, the only question before us was which "period prescribed by law" applied to section 57-1-34, and we determined that the appropriate period was that prescribed in section 70A-3-118(1), which provides a six-year period from the due date of the note or the acceleration due date. *Id*. ¶¶ 11–16 (cleaned up). In other words, we decided in *Deleeuw* only what event *triggers* the running of the limitations period for nonjudicial foreclosures (i.e., the events described in section 70A-3-118(1)). We rendered no opinion on what event *satisfies* the limitations period.

section 57-1-34 plainly and unambiguously provides that a lender pursuing a nonjudicial foreclosure of a trust deed commences an action for nonjudicial foreclosure, and thereby satisfies the limitations period, by "fil[ing] for record a notice of default." Utah Code Ann. § 57-1-34(2). And contrary to the Johnsons' preferred interpretation, there is no suggestion in either section 70A-3-118 or section 57-1-34 that the trustee's sale itself must occur within any specified time period or that the trustee's sale carries independent significance with respect to the applicable limitations period.

¶21 Here, applying the plain language described above, it is readily apparent that Appellees (through their predecessors-in-interest) satisfied the limitations period. Appellees' predecessors-in-interest accelerated the entire underlying obligation secured by the trust deed by declaring the obligation to be "immediately due and payable" on October 30, 2009. That acceleration event triggered the limitations period. The Default Notice was also filed and recorded with the Utah County recorder's office on October 30, 2009. Under the plain language of section 57-1-34(2), the timely recording of the Default Notice satisfied the limitations period.

¶22 Nevertheless, the Johnsons suggest that even if the "literal language" of section 57-1-34 dictates this result, we should reject it because such an interpretation works an absurd result. They contend that this interpretation has the practical effect of allowing a trustee to "wait any indefinite number of years that it desired before initiating the [trustee's] sale" and that the legislature cannot have intended that recording a notice of default, which accelerates the due date of the note, simultaneously triggers and satisfies the applicable statute of limitations. But applying the absurdity doctrine "is a drastic step, one [our supreme court has] described as strong medicine, not to be administered lightly," because it requires that we "override the plain language" employed by the legislature by "interpret[ing] the statute contrary to its plain meaning." *Utley v.*

*Mill Man Steel, Inc.*, 2015 UT 75, ¶¶ 47–48, 357 P.3d 992 (Durrant, C.J., concurring and dissenting) (cleaned up). In this respect, we will "not apply the absurdity doctrine unless the operation of the plain language is so overwhelmingly absurd that no rational legislator could have intended the statute to operate in such a manner." *Bagley*, 2016 UT 48, ¶ 28 (cleaned up).

¶23 The Johnsons have not demonstrated that no rational legislator could have intended a recorded notice of default to satisfy the limitations period for nonjudicial foreclosures of trust deeds—even in circumstances where the acceleration event occurs simultaneously with the recording event. *See id.* Appellees point out that the legislature might have sought to recognize that lenders typically have "more control over recording a notice of default than they do over the actual sale" and that tethering the limitations period for nonjudicial foreclosures of trust deeds to the event of recording the notice of the default—an early step in the nonjudicial foreclosure process—is consistent with the approach taken with judicial foreclosure, where the lender satisfies the limitations period by filing a complaint. *See* Utah Code Ann. § 57-1-34. *See generally id.* § 57-1-24 (2010) (outlining the process required to conduct a trustee's sale). The Johnsons do not engage in like reasoning, and apart from labeling the district court's interpretation absurd, they do not explain why no rational legislator could have intended the statutes to operate according to their plain meaning.[5]

¶24 In short, the Johnsons have not persuaded us that the legislature intended their preferred interpretation of section

---

5. The Johnsons additionally suggest that the foreclosure on the Property is barred by the doctrine of laches. This issue was not raised below and is unpreserved. Accordingly, we decline to reach it. *See True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶¶ 29–30, 427 P.3d 338.

57-1-34, in conjunction with section 70A-3-118(1). Thus, we affirm the district court's decision on this issue.

## II. Claim Preclusion

¶25   The Johnsons additionally argue that, in the alternative, the district court erred in concluding that their claims with respect to their TILA rescission are barred by the claim preclusion branch of res judicata. While they make several arguments with respect to the correct characterization of a TILA rescission, they essentially argue that raising the TILA rescission in the First Suit did not amount to raising *a claim* for claim preclusion purposes. We disagree.

¶26   The Johnsons filed a third suit (the Third Suit) in January 2018, which was also dismissed. Like the First Suit, both suits were connected, centering on the Johnsons' related attempts to attain relief from the foreclosure proceedings on the Property. In their appeal of the Third Suit, *Johnson v. Nationstar Mortgage LLC* (*Johnson I*), 2019 UT App 199, 455 P.3d 1120, the Johnsons raised the same res judicata argument presently before us—that the district court erred by concluding that their requests for relief based on their TILA rescission were claims for purposes of the claim preclusion branch of the doctrine of res judicata and that they were accordingly barred. There, we affirmed the district court's determination that the Johnsons' request for relief on the basis of their TILA rescission was barred by res judicata, concluding, among other things, that the district court in the First Suit "plainly resolved their requested entitlement to relief based on the fact of the TILA rescission" and that the Johnsons had not otherwise explained why claim preclusion did not apply under the circumstances. *See id.* ¶¶ 16–21.

¶27   This appeal likewise requires us to determine whether the district court erred in concluding that the court in the First Suit resolved the Johnsons' entitlement to relief, given their TILA rescission. And the Johnsons do not offer different grounds for

granting the relief they seek from the district court's claim preclusion decision, based on the dismissal of the First Suit, than they did in *Johnson I*. Thus, our reasoning in *Johnson I* applies here with the same force. Accordingly, for the same reasons articulated in *Johnson I*, we affirm the district court's determination that the Johnsons' request for relief on the basis of their TILA rescission is barred as res judicata by the district court's decision in the First Suit. *See id.*

## CONCLUSION[6]

¶28    We affirm the district court's dismissal of the Johnsons' claims. We conclude that the district court properly determined that the statute of limitations applicable to enforcing the Note secured by the trust deed on the Property had been met. And we conclude that the district court properly dismissed the Johnsons' TILA rescission claim on the basis of res judicata.

————————

6. In a single sentence of their conclusion, Appellees ask this court to award them fees incurred on appeal pursuant to rule 33 of the Utah Rules of Appellate Procedure. Rule 33 provides that if an appellate court determines that an appeal taken is "either frivolous or for delay, it shall award just damages, which may include single or double costs, . . . and/or reasonable attorney fees, to the prevailing party." Utah R. App. P. 33(a). "[P]arties seeking attorney fees under rule 33 face a high bar." *Porenta v. Porenta*, 2017 UT 78, ¶ 51, 416 P.3d 487. This is because the "imposition of such a sanction is a serious matter and only to be used in egregious cases, lest the threat of such sanctions should chill litigants' rights to appeal lower court decisions." *Id.* (cleaned up). Here, Appellees have not explained why the Johnsons' appeal meets this standard. Because Appellees have not demonstrated that rule 33 fees are justified, we decline to award them.